STATE OF NEBRASKA, APPELLEE, V. JAMES L. DEAN, APPELLANT.
464 N.W.2d 782

Filed January 18, 1991.    No. 90-196.

Richard L. Schmeling for appellant.

James L. Dean, pro se.

Robert M. Spire, Attorney General, and Elaine A. Catlin for appellee.

Hastings, C.J., Boslaugh, White, Caporale, Shanahan, Grant, and Fahrnbruch, JJ.

Fahrnbruch, J.

The defendant, James L. Dean, entered a plea of guilty to aiding and abetting the homicide of 68-year-old Helen Wilson in Beatrice, Nebraska, and was sentenced to 10 years' imprisonment for second degree murder.

Acting pro se, Dean assigns as error that his plea should not have been accepted because he did not have full notice of the charge, that there was no factual basis for one element of the charge, i.e., intent to kill, and in substance that his counsel was ineffective. Through counsel, Dean also complains that his sentence is excessive. We affirm Dean's conviction and sentence.

Dean told law enforcement officers that approximately a week before February 5, 1985, the date on which Helen Wilson was robbed, raped, and murdered, that he, four other men, and a woman talked about robbing Mrs. Wilson and that two of the men talked about raping her. The primary focus of the scheme was to obtain money. Two of the men present at the original planning did not participate when the crimes were committed. On the night of February 5, the two men who talked of raping the victim, Dean, the woman who participated in planning the robbery, and a woman who gave the signal for the robbery to begin, together with the victim's grandniece, forced their way into Mrs. Wilson's apartment when the victim responded to a knock on her door. The victim was knocked down in her living

room, forcibly taken to her bedroom, and threatened and physically abused when she refused to tell the intruders the location of her money. After the victim was subdued, she was taken back to the living room while screaming and kicking and placed on the floor. One of the robbers, with his hand or a knife at the victim's throat, demanded that Mrs. Wilson reveal where she kept her money. Mrs. Wilson was held down by one of the women intruders while two of the men took turns raping and vilifying the victim. When one of the men was not raping the victim, he was also holding her down while the second man raped her. While this was transpiring, the woman attacker suffocated the victim with a pillow and at one point committed sexual acts on the victim while one of the men was committing rape. Following vaginal, anal, and cunnilingus sexual assaults, it appeared that Mrs. Wilson was either dead or near death. It was then that the intruders searched the apartment and found Mrs. Wilson's money. Both at the planning of the robbery and at the victim's apartment, Dean suggested places where the victim might keep her money.

In his interviews with law enforcement officers, Dean admitted that the planned crime was to be a robbery. In an apparent effort to distance himself from the element of intent to kill, Dean also claimed that he was led to believe that no one would be home at the Wilson apartment when the crime would take place. The trial court obviously was not convinced by Dean's claim that he thought no one would be home. In any event, by Dean's own account of the events, the minute Mrs. Wilson responded to the knock at her door, the robbers, including Dean, forced their way into Mrs. Wilson's apartment and demanded money. Dean, at that time, knew that the apartment was occupied. He saw Mrs. Wilson get slapped and fall to the floor. In view of Dean's statements that he watched his partners in the robbery inflict injury upon Mrs. Wilson while she struggled, that he heard what sounded like the breaking of a bone, and that he saw the victim raped and finally smothered, the trial court could find beyond a reasonable doubt that while all this was going on, the defendant was well aware that one or more of his partners in crime had the intent to kill Mrs. Wilson. When Mrs. Wilson's body was found, she had

a complete fracture through the left lower humerus, her hands were loosely tied with a towel, and a scarf was tightly wrapped around her head and tied. Even before the defendant and his companions forced their way into Mrs. Wilson's apartment, Dean heard one of the men, who at the planning stage of the robbery said he wanted to sexually assault an elderly woman, boast that if anyone got in the way he would take care of them. Mrs. Wilson "got in the way" and she was "taken care of" by being killed. From these facts and from all of the circumstances surrounding the crimes that were committed, the available physical evidence, and the reports of the experts in connection therewith, the court was justified in finding that at least one of the robbers had the intent to kill the victim. The evidence shows beyond a reasonable doubt that Dean knew of that intent, and yet, he continued to participate in the robbery, which was the primary purpose of entering Mrs. Wilson's apartment. Dean said he absented himself from Mrs. Wilson's apartment for a few minutes, but he was able to describe in detail how the victim was abused, raped, and murdered. Moreover, it was after Dean returned to the apartment that the search for money took place. The presentence report supports the fact that Dean suggested places for the intruders to search for money at the apartment.

After finding Mrs. Wilson's money, the intruders left the victim's apartment. The female lookout apparently returned to her own apartment, the victim's grandniece was taken home, and the remaining four robbers, including the defendant, drove to a truckstop restaurant, where they ate breakfast.

Although an intensive investigation into Mrs. Wilson's death was undertaken immediately when her body was discovered on February 6, 1985, it was not until 1989 that law enforcement officers were able to make an arrest in connection with the crimes committed upon Mrs. Wilson.

The defendant was originally charged with murder in the first degree in that he did aid, abet, procure, or cause another to kill Helen Wilson in the perpetration of or attempt to perpetrate any sexual assault in the first degree, robbery, kidnapping, or burglary, in violation of Neb. Rev. Stat. §§ 28-303 and 28-206 (Reissue 1989), which carries a penalty of life imprisonment or death. See Neb. Rev. Stat. § 28-105 (Reissue 1985).

Pursuant to a plea agreement with the county attorney, the defendant entered a plea of guilty to an amended information charging him with aiding, abetting, procuring, or causing another to cause the death of Helen Wilson intentionally, but without premeditation, in violation of Neb. Rev. Stat. § 28-304 (Reissue 1989), which describes murder in the second degree, a Class IB felony carrying a penalty of not less than 10 years' up to life imprisonment. See § 28-105. A person who aids, abets, procures, or causes another to commit any offense may be prosecuted as if he were the principal offender. § 28-206.

In his plea bargain with the prosecutor, Dean agreed to plead guilty to aiding and abetting the murder of Mrs. Wilson if the State would reduce the charge from first to second degree murder. He also agreed to testify truthfully in any and all cases against other persons involved in the crimes against Mrs. Wilson and give total cooperation to the State of Nebraska regarding the Wilson homicide. After accepting Dean's guilty plea and following a presentence investigation, the district court for Gage County, on January 26, 1990, sentenced Dean to the statutory minimum term of 10 years' imprisonment, with credit for time served during the pendency of the action. Dean timely filed an appeal to this court.

In his pro se appeal brief, Dean claims the district court for Gage County erred (1) in accepting the defendant's plea of guilty when a critical element of the amended charge was lacking and when there was no factual basis given which indicated appellant had the specific intent necessary for prosecution and conviction on the charge alleged, and (2) in allowing the defendant to proceed to plea after his counsel had, inadvertently, made the court aware the reason for the defendant's plea to second degree murder was that the statute of limitations barred a plea to a lesser charge.

Through his lawyer, the defendant additionally claims that his sentence was excessive and that he should have received probation instead of a prison sentence.

Regarding Dean's first assignment of error, the standard for determining the validity of a guilty plea is whether it represents a voluntary and intelligent choice among alternative courses of action open to the defendant. See, *State v. Ponec*, 236 Neb.

710, 463 N.W.2d 793 (1990); *State v. Shepard,* 208 Neb. 188, 302 N.W.2d 703 (1981). In order to support a finding that the plea of guilty has been entered freely, intelligently, voluntarily, and understandingly, (1) the trial court must inform the defendant concerning the nature of the charge, the right to assistance of counsel, the right to confront witnesses against him or her, the right to a jury trial, and the right against self-incrimination, and must examine the defendant to determine that he or she understands the foregoing; additionally, (2) the record must establish that there is a factual basis for the plea and that the defendant knew the range of penalties for the crime with which he or she is charged. *State v. Walker,* 235 Neb. 85, 453 N.W.2d 482 (1990) (quoting *State v. Irish,* 223 Neb. 814, 394 N.W.2d 879 (1986)); *State v. Rhodes,* 233 Neb. 373, 445 N.W.2d 622 (1989).

Regarding the first factor, Dean contends that he did not receive "real notice of the true nature of the charge against him" and the court "did not assure that the defendant possessed an understanding of how the elements of the crime are related to the facts." Pro se brief for appellant at 6. Specifically, Dean argues that there was no factual basis given which indicated that he had the specific intent necessary for his prosecution and conviction of second degree murder.

At his arraignment in district court, the judge informed Dean of the nature of the charge against him, his right to assistance of counsel, his right to confront witnesses against him, his right to a jury trial, and his right against self-incrimination. He also explained the various pleas the defendant could enter.

The element of "intent" was emphasized several times in colloquy between the court and Dean before the defendant entered his plea of guilty:

> THE COURT: All right. Mr. Dean, the laws of Nebraska say this: A person commits murder in the second degree if he causes the death of a person *intentionally* but without premeditation. . . .
>
> . . . .
>
> Now, the laws of Nebraska also provide that a person who aids, abets, procures or causes another to commit any

offense may be prosecuted and punished as if he were the principal offender. And what that means is this: If you helped somebody or got somebody or caused somebody to commit this murder, and you are convicted of that, you are subject to punishment, the same as if you had been the person who actually did it. Do you understand what I'm saying?

THE DEFENDANT: Yes, I do.

. . . .

THE COURT: Now, I want to call to your attention that this charge provides that second degree murder requires that she was *intentionally* killed. And so far as that is concerned, *the county attorney would have to show that you knew that the person who did the actual killing had that intent or that you had yourself when you encouraged this person to do it.* Do you understand what I'm saying to you?

THE DEFENDANT: Yes, I do.

(Emphasis supplied.)

Dean told the court he understood the elements of the charge which the county attorney would have to prove to convict him.

THE COURT: And do you understand that he's got to prove all of those things beyond a reasonable doubt in that regard to warrant a jury finding you guilty; and that if he failed to prove one or more of those beyond a reasonable doubt, that jury could not convict you. Do you understand that?

THE DEFENDANT: Yes, I do.

Clearly, the trial judge properly informed Dean of the nature of the charge and his rights, and assured he understood them throughout the arraignment and during entry of his guilty plea.

Toward the second *Walker* factor, Dean contends that despite his pleading guilty, no factual basis existed for acceptance of the plea because "[a]t no time . . . did the appellant or his counsel indicate the appellant had intended to aid and abet a murder . . . ." Pro se brief for appellant at 7. This contention misrepresents the aiding and abetting statute. As previously stated, the statute provides, and the district court described, that the intent element applies to the aider and abettor *or* to the person who

actually commits the murder. See §§ 28-206 and 28-304.

The essential elements of second degree murder are that the murder must be done purposely and maliciously. *State v. Trevino*, 230 Neb. 494, 432 N.W.2d 503 (1988); *State v. Ettleman*, 229 Neb. 220, 425 N.W.2d 894 (1988). Malice, in this context, denotes that condition of mind which is manifested by the intentional doing of a wrongful act without just cause or excuse. *State v. Pettit*, 233 Neb. 436, 445 N.W.2d 890 (1989); *State v. Moniz*, 224 Neb. 198, 397 N.W.2d 37 (1986). The state of mind required for second degree murder may be inferred from the circumstantial evidence of the criminal act. *State v. Rowe*, 214 Neb. 685, 335 N.W.2d 309 (1983). Aiding and abetting involves some participation in the criminal act and must be evidenced by some word, act, or deed. No particular acts are necessary, nor is it necessary that any physical part in the commission of the crime is taken or that there was an express agreement therefor. Mere encouragement or assistance is sufficient. *State v. Ryan*, 233 Neb. 74, 444 N.W.2d 610 (1989); *State v. Schreck*, 224 Neb. 650, 399 N.W.2d 830 (1987).

At the arraignment, the district court listened to the county attorney describe the nature of the evidence that would be adduced if the matter went to trial. This included a summary of an accomplice's statement which placed Dean at the crime scene and which indicated his entering of the apartment by force, his observing of the sexual assaults and homicide, and his suggesting of places to look for money; a summary of a statement Dean gave Deputy Sheriff Burdette Searcey which corroborates the accomplice's statement; and a report of what Dr. John F. Porterfield, the Gage County coroner's physician, found when he performed the autopsy on Mrs. Wilson's body.

In addition to pleading guilty, Dean also made a judicial admission that he actively participated in certain events outlined by the county attorney, including forcing entry into the victim's apartment and giving advice on where to look for money. After the county attorney outlined what he expected to prove in regard to the forced entry of the victim's apartment, the sexual assaults on the victim, her death, and the robbery, the court asked the defendant, "Did you participate in the events that the county attorney has outlined, Mr. Dean?" The

defendant answered, "Yes."

In reviewing a plea of guilty, this court need not rely solely upon the bill of exceptions, but may also consider matters contained in the defendant's presentence investigation in determining whether there is a factual basis for the defendant's plea of guilty. See, *State v. Rivers*, 226 Neb. 353, 411 N.W.2d 350 (1987); *State v. Loschen*, 221 Neb. 315, 376 N.W.2d 792 (1985).

Here, the presentence investigation contained numerous statements made by the defendant to law enforcement officers. Those statements were corroborated not only by the physical evidence found at the crime scene and the scientific examination of that evidence, but also by interviews with other people involved or intimately familiar with some details of the crimes against the deceased as heretofore related.

Dean participated in every step of the robbery scheme. He stated that he initiated the idea of a robbery; the planning occurred at his apartment; he agreed to the plan knowing of his companions' intent to rape the victim; he participated in stating a false plan in order to avoid suspicion by his girl friend; he suggested where to look for the money; the plan provided for him to search a portion of the apartment; he was the one who closed the door after the forced entry; he knew that if anyone got in the way of the robbery, one of his companions would kill the obstructor; he knew that Mrs. Wilson was dead or near death before the robbery was consummated; and at the apartment he suggested to his partners in crime where to search for Mrs. Wilson's money. These suggestions were made after Mrs. Wilson was fatally injured.

A woman who was at the scene described Dean's disposition while witnessing the assault. She told police: "[H]e had an attitude that he didn't care. Um he was watching everything and just liked it."

The foregoing demonstrates a clear factual basis from which a fact finder could find beyond a reasonable doubt that Dean assisted and encouraged others in the robbery and homicide of Mrs. Wilson. He was instrumental in planning the robbery, and he was at the crime scene and acted in concert with his coperpetrators in the robbery, knowing all the time that if

anyone got in the way, that person would be "taken care of." Since the trial judge also explained the penalties involved, Dean's first assignment of error is without merit.

The second assignment of error is at best confusing. It appears that Dean is claiming ineffective assistance of counsel. According to Dean, his counsel chose to minimize the risk of a more severe penalty by having Dean plead guilty to aiding and abetting second degree murder, but, again, Dean claims he had no intent to harm anyone. As twice before stated, the intent element is not limited to the aider and abettor. Dean's reliance on such an argument has no value.

> A criminal defendant has a constitutional right not only to counsel but to effective assistance of counsel. [Citation omitted.] The voluntariness of a plea entered upon the advice of counsel depends on whether the advice was within the range of competence demanded of attorneys in criminal cases. [Citation omitted.]
>
> To sustain a claim of ineffective assistance of counsel, the defendant must show that (1) counsel's performance was deficient and (2) such deficient performance prejudiced the defense; that is, there must be a demonstration of reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. [Citations omitted.]

*State v. Wakeman*, 231 Neb. 66, 71, 434 N.W.2d 549, 554 (1989).

Obviously, Dean's misstatement of the law does not support his contention that his counsel acted improperly. A guilty plea otherwise voluntarily and intelligently made with competent counsel is not invalid because it was motivated by a desire to avoid the death penalty or obtain a lesser sentence. See *Brady v. United States*, 397 U.S. 742, 90 S. Ct. 1463, 25 L. Ed. 2d 747 (1970). The chance of Dean being convicted of aiding and abetting a first degree murder in the commission of specified felonies was most probable. The facts of the killing as heretofore related would support, beyond a reasonable doubt, a conviction of Dean for murder in the first degree, the murder having been consummated during the perpetration of both a

violent, forcible robbery and multiple first degree sexual assaults. The advice of Dean's counsel was well within the range of attorney competence. Moreover, at the arraignment Dean stated that he was properly represented and had no complaints concerning the representation. The second assignment of error is therefore without merit.

Finally, we address Dean's last assignment of error, which is the sole assignment in his attorney's brief. Dean argues that the sentence imposed was excessive because the statute of limitations barred any lesser charge to which he could plead. There is no showing that the State ever offered or was willing to offer Dean any lesser offense than second degree murder. The trial court imposed the minimum imprisonment sentence of 10 years for murder in the second degree and gave Dean credit for time served. The court's only other alternative was to sentence Dean to probation.

In an oft-stated rule, we have held that an order imposing a sentence within the statutorily prescribed limits will not be disturbed on appeal absent an abuse of discretion. *State v. Valdez,* 236 Neb. 627, 463 N.W.2d 326 (1990); *State v. Garza,* 236 Neb. 215, 459 N.W.2d 747 (1990). Since Dean received the statutory minimum of 10 years' imprisonment, the issue is whether the district court abused its discretion in not placing Dean on probation.

Dean, through his lawyer, contends that this court should exercise its discretion to reduce the sentence because it is unjust and excessive considering the age of, the prior record of, and advance planning by the defendant.

> [I]n considering a proper sentence, the trial court is not limited in its discretion to any mathematically applied set of factors. It is necessarily a subjective judgment and includes the observations of the sentencing judge as to the demeanor, attitude, and all facts and circumstances surrounding the life of the defendant. "A sentencing judge has broad discretion as to the source and type of evidence or information which may be used as assistance in determining the kind and extent of the punishment to be imposed and the judge may consider probation officer reports, police reports, affidavits, and other information,

including his own personal observations."
(Emphasis omitted.) *State v. Stranghoener*, 208 Neb. 598, 603, 304 N.W.2d 679, 682 (1981). See *State v. Schall*, 234 Neb. 101, 449 N.W.2d 225 (1989).

Of particular importance in imposing a sentence, a trial court should consider, among the other circumstances, the nature of the offense and the amount of violence involved in the commission of the crime. The seriousness of the offense is one of the important factors in setting a sentence. *State v. Rhodes*, 233 Neb. 373, 445 N.W.2d 622 (1989); *State v. Jones*, 232 Neb. 576, 441 N.W.2d 605 (1989). In considering probation in lieu of a sentence the court should not withhold imprisonment when a lesser sentence would depreciate the seriousness of the offender's crime or promote disrespect for the law. See Neb. Rev. Stat. § 29-2260 (Reissue 1989).

However, the denial of probation and the imposition of a sentence within statutorily prescribed limits will not be disturbed on appeal unless there has been an abuse of discretion. *State v. Contreras*, 236 Neb. 455, 461 N.W.2d 562 (1990); *State v. Pillard*, 235 Neb. 642, 456 N.W.2d 755 (1990).

The trial judge properly exercised his discretion in denying Dean probation and in imposing a prison sentence. As the judge declared, this is a murder case, and although Dean's role was limited, to grant probation would minimize the seriousness of the crime and be totally disproportionate to that seriousness. Dean himself admits, in his pro se brief, that probation in a murder case would be unrealistic. The fact that Dean was unable to plead to a lesser charge does not equate with injustice. Altering a charge from first degree murder to second degree murder is a substantial concession. See *State v. Suffredini*, 224 Neb. 220, 397 N.W.2d 51 (1986). The final assignment of error is without merit. The judgment of the district court is affirmed.

AFFIRMED.