STATE OF NEBRASKA, APPELLEE, V.
FREDDY GIOVANNI CHOJOLAN, APPELLANT.
571 N.W. 2d 621

Filed December 19, 1997.    No. S-96-511.

Arthur C. Toogood, Adams County Public Defender, for appellant.

Don Stenberg, Attorney General, and Kimberly A. Klein for appellee.

WHITE, C.J., CAPORALE, WRIGHT, CONNOLLY, GERRARD, STEPHAN, and McCORMACK, JJ.

McCORMACK, J.

The appellee, State of Nebraska, charged the appellant, Freddy Giovanni Chojolan, with murder in the first degree and use of a weapon to commit a felony. Pursuant to verdict, Chojolan was found guilty of manslaughter and not guilty of the weapons charge. The district court for Adams County, Nebraska, thereafter sentenced him to 15 to 20 years in the custody of the Department of Correctional Services. The Nebraska Court of Appeals affirmed Chojolan's conviction and sentence. *State v. Chojolan*, 97 NCA No. 6, case No. A-96-511 (not designated for permanent publication). Chojolan petitioned this court for further review, which was granted. We affirm the judgment.

## BACKGROUND

On February 17, 1995, 14-year-old Carol Alarcon was at Chojolan's house with several of their friends, including Gerardo Soto. Alarcon had previously dated Chojolan, but the two had "broken up" in approximately January 1995. One of the witnesses present at the house, Armando Rodriguez, testified that after seeing Alarcon dance with Soto, Chojolan broke a window. Rodriguez indicated that Chojolan stated that he was upset because Alarcon no longer loved him and that he broke the window because he was "very bitter" about Alarcon. Chojolan left the house and returned to find Alarcon and Soto kissing.

Later that evening, Alarcon and Soto were passengers in the back seat of a car driven by Chojolan. While driving, Chojolan saw Alarcon and Soto kissing in the back seat. Alarcon died shortly thereafter. Chojolan contends that Alarcon died after jumping out of the moving vehicle while traveling on U.S. Highway 6. The State maintains that Alarcon died after Chojolan struck her in the head with a tire iron.

Thomas Petersen testified that he was driving west on Highway 6 on the evening in question and observed brake lights

come on in from of him. As he approached the area where he had seen the lights, he observed a vehicle on the highway, a man standing in the middle of the road, and a girl lying face down behind the car. He testified that the man was trying to drag the girl into the car. After stopping briefly, Petersen went to get help. After he left, Alarcon was put into Chojolan's vehicle to be taken to the hospital, with Soto driving. On the way to the hospital, the car hit a median. Two of its tires went flat, and it came to rest on Highway 6 in front of Andy's Cafe.

Kenneth Carter testified that while driving east on Highway 6 near Andy's Cafe, a man flagged him down and asked for a ride to the hospital because "she is hurt." As Chojolan and Soto started to remove Alarcon from Chojolan's vehicle, a woman leaving a local establishment and identifying herself as a paramedic told them to leave Alarcon on the highway. Alarcon was pronounced dead at the scene.

Walter Eley was the first Hastings police officer to arrive at the scene. He testified that Chojolan told him Alarcon had jumped out of the car. Eley testified that he spoke to Chojolan in English and had no difficulty understanding Chojolan. Investigators Paul Weber and Glenn Kemp of the sheriff's office arrived together, and Weber began to talk to Chojolan. Weber testified that he asked Chojolan what had happened and was told by Chojolan that Chojolan, Soto, and Alarcon had been driving around and that Alarcon had jumped from the car while it was traveling between 50 and 55 miles per hour. Chojolan then took Weber and Kemp to the location of the alleged jump, near mile marker 210 on Highway 6, where Weber found some small blood drops on the pavement. After Kemp informed Chojolan that the physical evidence was inconsistent with his statement that Alarcon jumped from the car, Chojolan began to lower the speed at which Chojolan claimed Alarcon jumped from the vehicle until he was down to a speed of less than 5 miles per hour. Kemp removed a tire iron from Chojolan's trunk. Kemp testified that the blood at the scene had fallen straight down with no forces pushing on it in any direction. Kemp also testified that Chojolan spoke perfect English to him.

Weber testified that there was virtually no damage to Alarcon's clothing, that her leather boots were not scuffed up,

and that her clothing was not torn. He noted that the only scrape marks on Alarcon were some small abrasions on her buttocks. Weber testified that Alarcon's body and clothing were inconsistent with those of a person who had rolled from a car. Another officer at the scene, John Schakat, also testified that Alarcon had no scrapes or markings on her clothing or body.

Dr. Blaine Roffman performed an autopsy on Alarcon and testified that she died from a blow to the head caused by a broad-base-type instrument, possibly a tire iron. According to Roffman, the likelihood of Alarcon's sustaining this injury from jumping from a vehicle traveling 50 miles per hour was "nil to none." He testified that one would anticipate skin abrasions even if a person jumped from a vehicle traveling at only 5 miles per hour.

Kathy Schmitz, the limited-English-proficiency teacher at Hastings public schools, testified that Chojolan had participated in her classes and was "above average" and "very bright," with high basic interpersonal communication skills.

### STATEMENTS OF CHOJOLAN AND SOTO

Both Soto and Chojolan were taken to the police station and interrogated by Investigator Vincent Hernandez. Soto was first questioned at 5:55 a.m. on February 18, 1995. After being given his *Miranda* rights in Spanish, Soto indicated that he understood his rights and signed a waiver form. At this interview, Soto gave a statement similar to that given at the scene, namely, that Alarcon was injured after jumping out of Chojolan's vehicle. Chojolan was first questioned at 8 a.m. on February 18. Chojolan was also given his *Miranda* rights in Spanish, and he also indicated that he understood his rights and signed a waiver form. Chojolan also maintained that Alarcon had jumped from his vehicle. Both Chojolan and Soto were then taken to Mary Lanning Hospital to be examined.

Hernandez questioned Soto a second time at approximately 1:05 p.m. on February 18. Soto was again given his *Miranda* rights, indicated that he understood them, and waived them. During this interview, Soto gave a different version of Alarcon's death. He stated that Chojolan was driving very fast and that he and Alarcon asked him to stop the car. After Chojolan stopped the car, he and Alarcon began arguing outside of the car.

Chojolan then grabbed a "ferreo," meaning "iron" in Spanish, and swung at Alarcon. Soto stated that he caught the tire iron and pushed Alarcon out of the way. He stated that Chojolan swung the iron again and struck Alarcon, who instantly fell to the ground. Soto stated that Chojolan then got scared and wanted to take Alarcon to the hospital.

Chojolan was questioned a second time at approximately 2:35 p.m. on February 18. Chojolan was again given his *Miranda* rights, indicated that he understood them, and waived them. During this interview, Hernandez informed Chojolan that the "jumping" story did not fit the physical evidence and told him that Soto had turned Chojolan in. Chojolan began to cry and indicated that he had hit Alarcon with a tire iron and that it was an accident. Chojolan drew a picture of the tire iron he had used. Hernandez testified that during the interview he told Chojolan he thought Chojolan was lying, but denied raising his voice to Chojolan.

Kemp then transported Chojolan to the scene so that Chojolan could tell police where he had thrown the tire iron. No tire iron other than the one removed from Chojolan's trunk was ever found. The tire iron removed from Chojolan's trunk had no traces of blood on it. On his return to the station, however, Chojolan once again changed his story and again stated that Alarcon had jumped from the vehicle.

Soto was questioned for a third time at 5 p.m. on Friday, February 18. He gave basically the same information as in the second interview, but added that Chojolan told him to tell the police that Alarcon had jumped and that Chojolan was 16 years old, or Chojolan would "kick his ass."

Chojolan was interviewed a third time at approximately 5:45 p.m. on February 18. Again, Chojolan was given his *Miranda* rights, indicated that he understood his rights, and waived them. Chojolan stated that while in the car, Alarcon had told Chojolan that she loved him and that this upset him because he knew that it was not true. Chojolan again admitted to hitting Alarcon with a tire iron and told substantially the same story he had previously given to the police. He then provided a written statement.

Hernandez testified that he never threatened Soto with prosecution or told him that Chojolan was accusing him. He also

testified that he interviewed both Soto and Chojolan in English unless they had a question, at which point he would repeat the question in Spanish. He testified that both men napped between interviews and that neither appeared tired. Both men appeared to understand and comprehend what was happening.

John Rust, chief deputy with the sheriff's office, questioned both Chojolan and Soto on February 20, 1995. Both were again read their *Miranda* rights, both indicated they understood them, and both waived those rights. Soto conveyed substantially the same information and described the tire iron used by Chojolan as gold in color. When shown two tire irons, Soto specifically identified the one taken from Chojolan's trunk. Chojolan also gave substantially the same information and also demonstrated how he had struck Alarcon. When Chojolan was shown the two tire irons, he also selected the one taken from his trunk as similar to the murder weapon, but stated the one he had actually used was gray in color.

Chojolan was charged by information on March 17, 1995, with first degree murder and use of a weapon to commit a felony.

## DISTRICT COURT'S DECISION

Chojolan made a motion to suppress statements given to police, but his motion was denied on September 22, 1995, after a hearing. Another hearing was held on Chojolan's motion to transfer the case to juvenile court. Chojolan testified that he was 16 years old when Alarcon was killed, although all of his U.S. documentation indicates that he was 19 years old at the time. This motion was also denied. During the trial, Soto, who was called and sworn, invoked his Fifth Amendment privileges upon the advice of his attorney and refused to testify at trial. Over defense counsel's timely objections, the district court, despite the fact Soto was in the courtroom, ruled that Soto was unavailable and admitted his statements as an exception to the hearsay rule pursuant to Neb. Rev. Stat. § 27-804(2)(c) (Reissue 1995). Following a jury trial, Chojolan was found guilty of manslaughter and not guilty of use of a weapon to commit a felony. His motion for a new trial was denied. Chojolan was sentenced to 15 to 20 years' incarceration and was given credit for 426 days served.

## COURT OF APPEALS' DECISION

Chojolan appealed to the Court of Appeals, contending that the trial court erred in overruling his motion to suppress, in overruling his motion to transfer to juvenile court, in finding a witness unavailable, in admitting hearsay evidence, in denying a proposed jury instruction, in overruling his motion for a directed verdict, in overruling his motion for a new trial, and in imposing an excessive sentence. The Court of Appeals affirmed the district court's decision, specifically finding that the admission of Soto's statements, if erroneous, was harmless beyond a reasonable doubt.

## ASSIGNMENTS OF ERROR

In his petition for further review, Chojolan assigns as error the Court of Appeals' (1) finding the admission of statements of Soto was harmless error, (2) failing to reverse his conviction because of the admission of the statements of Soto, (3) finding that Chojolan's statements were voluntary and were properly admitted at trial, and (4) finding that the sentence imposed on Chojolan was not excessive.

## STANDARD OF REVIEW

In all proceedings where the Nebraska Evidence Rules apply, admissibility of evidence is controlled by the Nebraska Evidence Rules, not judicial discretion, except in those instances under the Nebraska Evidence Rules when judicial discretion is a factor involved in the admissibility of evidence. *State v. Merrill*, 252 Neb. 736, 566 N.W.2d 742 (1997); *State v. Allen*, 252 Neb. 187, 560 N.W.2d 829 (1997); *State v. Earl*, 252 Neb. 127, 560 N.W.2d 491 (1997); *State v. Nissen*, 252 Neb. 51, 560 N.W.2d 157 (1997); *Main Street Movies v. Wellman*, 251 Neb. 367, 557 N.W.2d 641 (1997); *State v. Morris*, 251 Neb. 23, 554 N.W.2d 627 (1996).

The admissibility of evidence is reviewed for an abuse of discretion where the Nebraska rules of evidence commit the evidentiary question at issue to the discretion of the trial court. *State v. Allen, supra*; *State v. Earl, supra*; *State v. McBride*, 250 Neb. 636, 550 N.W.2d 659 (1996); *State v. Eona*, 248 Neb. 318, 534 N.W.2d 323 (1995); *State v. Williams*, 247 Neb. 878, 530 N.W.2d 904 (1995).

In determining whether error in admitting evidence was harmless, an appellate court bases its decision on the entire record in determining whether the evidence materially influenced the jury in a verdict adverse to the defendant. *State v. Merrill, supra*; *State v. Neujahr*, 248 Neb. 965, 540 N.W.2d 566 (1995); *State v. Lee*, 247 Neb. 83, 525 N.W.2d 179 (1994).

The state has the burden to prove beyond a reasonable doubt that the admission of the statement was harmless. *State v. Hughes,* 244 Neb. 810, 510 N.W.2d 33 (1993).

A sentence imposed within statutory limits will not be disturbed on appeal absent an abuse of discretion by the trial court. *State v. McBride*, 252 Neb. 866, 567 N.W.2d 136 (1997); *State v. Schultz,* 252 Neb. 746, 566 N.W.2d 739 (1997); *State v. Merrill*, 252 Neb. 510, 563 N.W.2d 340 (1997); *State v. Earl, supra*; *State v. Cook*, 251 Neb. 781, 559 N.W.2d 471 (1997).

An abuse of discretion takes place when the sentencing court's reasons or rulings are clearly untenable and unfairly deprive a litigant of a substantial right and a just result. *State v. Merrill, supra*; *State v. Earl, supra*; *State v. Cook, supra*; *State v. Orduna*, 250 Neb. 602, 550 N.W.2d 356 (1996).

## ANALYSIS

Chojolan's first and second assigned errors in his petition for further review challenge the admission of certain statements made by Soto and attested to by police officers. The trial court found that Soto's statements were admissible as an exception to the hearsay rule pursuant to § 27-804(2)(c). After an appeal in which Chojolan asserted that (1) the trial court erred in finding Soto's statements were admissible as an exception to the hearsay rule based on unavailability and (2) that the admission of the statements violated his constitutional right of confrontation, the Court of Appeals found that the admission of Soto's statements, if erroneous, was harmless error.

### HARMLESS ERROR

The Court of Appeals held that the admission of Soto's statements, even if erroneous, was harmless error. Without deciding whether the admission of Soto's statements was error, we agree with the Court of Appeals that any error in the admission of the statements was harmless.

Erroneous admission of evidence is harmless error and does not require reversal if the evidence erroneously admitted is cumulative and other relevant evidence, properly admitted, or admitted without objection, supports the finding by the trier of fact. *State v. Twohig*, 238 Neb. 92, 469 N.W.2d 344 (1991); *State v. Cox*, 231 Neb. 495, 437 N.W.2d 134 (1989). Based upon a reading of the entire record, we conclude that Soto's statements are cumulative and that the evidence properly admitted at trial supports the finding of guilt beyond a reasonable doubt. In this case, Chojolan, during two different interviews, admitted hitting Alarcon with the tire iron as opposed to stating she jumped from the vehicle. The pathologist testified that the fatal wounds suffered by Alarcon were from a blow to the head with a broad-base-type instrument; that the likelihood of sustaining the injuries from jumping from a car going only 5 miles per hour was "nil to none"; and that skin abrasions would be expected, which Alarcon did not have, if she had jumped from a car. Weber testified that there was virtually no damage to Alarcon's clothing, that her leather boots were not scuffed, and that her clothes were not torn. Schakat testified there were no scrapes or markings on Alarcon's clothing and body. Kemp testified that the blood at the scene fell straight down with no force pushing it in any direction. It is these facts which we hold overwhelmingly establish Chojolan's guilt beyond a reasonable doubt, and therefore, the admission of Soto's statements was harmless error. Therefore, Chojolan's first and second assignments of error are without merit.

We now turn to Chojolan's contention that the Court of Appeals erred in finding that his statements were voluntary and were properly admitted. This contention is also without merit.

Statements made after *Miranda* rights are given are required to be made voluntarily. *State v. Lopez*, 249 Neb. 634, 544 N.W.2d 845 (1996). The state has the burden to establish that a defendant's statement was voluntary and not coerced. *Id.* The determination of voluntariness is based upon an assessment of all of the circumstances and factors surrounding the occurrence when the statement is made, and the determination made by the trial court will not be disturbed on appeal unless clearly wrong. *State v. Mantich*, 249 Neb. 311, 543 N.W.2d 181 (1996).

The evidence in the present case indicates that Chojolan was given his *Miranda* rights in both English and Spanish prior to each interview with the police. It is also clear from the record that Chojolan waived these rights. Chojolan does not assert that his confession was the result of promises, threats, or inducements, but, rather, that it was involuntary due to his age, 16 at the time of the incident, and the 14 hours spent in custody.

While the accused's minority is a factor to consider when determining the voluntariness of a confession, it is not determinative. *State v. Johnson,* 242 Neb. 924, 497 N.W.2d 28 (1993). In the present case, while Chojolan testified to being 16 at the time of the accident, all of his U.S. documentation indicated he was 19 years old. Further, testimony from Hernandez indicated that Chojolan did not appear tired and appeared to understand and comprehend what was happening. After considering all of the circumstances surrounding the confession, we determine that the district court was not clearly wrong in its finding that Chojolan's confession was voluntary. Therefore, we determine that the statements of Chojolan were properly admitted.

Finally, we turn to Chojolan's contention that the Court of Appeals erred in its finding that the sentence imposed on him was not excessive. Chojolan was found guilty of manslaughter, a Class III felony punishable by a maximum of 20 years' imprisonment, a $25,000 fine, or both. Neb. Rev. Stat. §§ 28-305 (Reissue 1995) and 28-105 (Reissue 1989). He was sentenced to a term of 15 to 20 years in prison.

Chojolan argues that this sentence is excessive given his age and the fact that he has no prior criminal history. We have stated that in imposing a sentence, a sentencing judge should consider the defendant's age, mentality, education, experience, and social and cultural background, as well as his or her past criminal record or law-abiding conduct, motivation for the offense, nature of the offense, and the amount of violence involved in the commission of the crime. *State v. Wilson,* 252 Neb. 637, 564 N.W.2d 241 (1997); *State v. Cook,* 251 Neb. 781, 559 N.W.2d 471 (1997); *State v. Orduna,* 250 Neb. 602, 550 N.W.2d 356 (1996); *State v. Ladig,* 248 Neb. 737, 539 N.W.2d 38 (1995); *State v. Derry,* 248 Neb. 260, 534 N.W.2d 302 (1995); *State v. Lowe,* 244 Neb. 173, 505 N.W.2d 662 (1993).

We have also stated, however, that a sentence imposed within statutory limits will not be disturbed on appeal absent an abuse of discretion by the trial court. *State v. McBride*, 252 Neb. 866, 567 N.W.2d 136 (1997); *State v. Schultz*, 252 Neb. 746, 566 N.W.2d 739 (1997); *State v. Merrill*, 252 Neb. 510, 563 N.W.2d 340 (1997); *State v. Earl*, 252 Neb. 127, 560 N.W.2d 491 (1997); *State v. Cook, supra*. An abuse of discretion takes place when the sentencing court's reasons or rulings are clearly untenable and unfairly deprive a litigant of a substantial right and a just result. *State v. Merrill, supra*; *State v. Earl, supra*; *State v. Cook, supra*; *State v. Orduna, supra*.

While we acknowledge Chojolan's age and lack of a criminal record, he was convicted of a violent act resulting in the death of a 14-year-old girl. His sentence of 15 to 20 years in prison is not clearly untenable, nor does it deprive him of a just result. We conclude, therefore, that the trial court did not abuse its discretion.

## CONCLUSION

Having determined that Chojolan's assigned errors are without merit, we affirm the judgment of the Court of Appeals.

AFFIRMED.

WHITE, C.J., concurs in the result.