STATE OF NEBRASKA, APPELLEE, V. ORLANDO E. PARKS, APPELLANT.

596 N.W. 2d 712

Filed June 15, 1999.   No. A-98-733.

Thomas C. Riley, Douglas County Public Defender, and Timothy F. Shanahan for appellant.

Don Stenberg, Attorney General, and Martin W. Swanson for appellee.

IRWIN, Chief Judge, and HANNON and SIEVERS, Judges.

IRWIN, Chief Judge.

## I. INTRODUCTION

Pursuant to a plea agreement, Orlando E. Parks pled no contest to third degree assault on an officer, a Class IV felony, and was sentenced to 2 to 3 years' imprisonment with credit for time served of 234 days. On appeal, Parks assigns that the district court erred in accepting his plea because the factual basis

offered by the State was insufficient and in imposing an excessive sentence. For the reasons stated below, we affirm as modified.

## II. FACTUAL BACKGROUND

According to the factual basis provided by the State, Parks was housed at the Douglas County Correctional Center when the following incident occurred: While in the cafeteria, Parks apparently took two cups of orange juice. "A deputy, or rather a correctional officer named Mr. Ronald Sharman" observed this and noted that Parks was allowed only one. When Ronald Sharman confronted Parks, Parks hit the tray in Sharman's arms which in turn hit Sharman, causing a 4-inch laceration on his face.

On November 20, 1997, Parks was charged by information in the district court for Douglas County with third degree assault on an officer in violation of Neb. Rev. Stat. § 28-931(1) (Reissue 1995). On March 2, 1998, Parks pled no contest to the charge pursuant to a plea bargain wherein the State agreed not to file a habitual criminal charge against him and to dismiss another criminal case pending against Parks in exchange for his plea of no contest to the present charge. Thereafter, Parks was advised by the court of his rights as required by *State v. Irish*, 223 Neb. 814, 394 N.W.2d 879 (1986). The court then found Parks' plea to be made freely, knowingly, intelligently, and voluntarily and found Parks guilty of the crime charged.

On June 16, 1998, Parks was sentenced to 2 to 3 years' imprisonment with credit for 234 days' time served. This appeal timely followed.

## III. ASSIGNMENTS OF ERROR

For Parks' assignments of error, he contends that the factual basis was insufficient to support his no contest plea and that the sentence imposed by the district court was excessive.

## IV. ANALYSIS

### 1. SUFFICIENCY OF FACTUAL BASIS

We address whether the factual basis was insufficient to support Parks' plea of no contest. In Parks' brief, he points out that third degree assault on an officer requires that the person injured be a peace officer or employee of the Department of Correc-

tional Services "while such officer or employee is engaged in the performance of his or her official duties." § 28-931. Parks argues that the factual basis provided by the State was insufficient because it did not establish that Sharman was a "peace officer or . . . employee of the Department of Correctional Services" at the time of the incident or that Sharman was "engaged in the performance of his official duties." Brief for appellant at 4.

■ Generally, a guilty plea admits all facts recited in open court by the State and all facts alleged in the information or complaint, including the fact that the offense was committed and the time and place of its commission. *State v. Dodson*, 250 Neb. 584, 550 N.W.2d 347 (1996). However, before a trial court can accept a defendant's guilty plea, it must determine whether among other things, a factual basis for the plea exists. *Id.* See, also, *State v. LeGrand*, 249 Neb. 1, 541 N.W.2d 380 (1995); *Irish, supra.* A guilty plea must be entered freely, intelligently, voluntarily, and understandingly to be accepted by the trial court. In finding that a guilty plea is made freely, intelligently, voluntarily, and understandingly, the court must find that the record establishes a factual basis for that plea. *Dodson, supra*; *LeGrand, supra*; *Irish, supra.* A trial court is afforded discretion in deciding whether to accept guilty pleas, and an appellate court will reverse the trial court's determination only in the case of an abuse of discretion. *Dodson, supra.*

■ We note that statutory interpretation is a matter of law, in connection with which an appellate court has an obligation to reach an independent, correct conclusion irrespective of the determination made by the court below. *State v. Burlison*, 255 Neb. 190, 583 N.W.2d 31 (1998); *State v. Tlamka*, 7 Neb. App. 579, 585 N.W.2d 101 (1998).

■ The issue regarding whether the victim was engaged in the performance of his or her official duties is easily resolved. It is well established that in reviewing a plea of guilty, an appellate court need not rely solely upon the bill of exceptions, but may also consider matters contained in the defendant's presentence investigation in determining whether there is a factual basis for the defendant's plea of guilty. See, e.g., *State v. Dean*, 237 Neb. 65, 464 N.W.2d 782 (1991). Included in the presen-

tence investigation report in this case is the bill of exceptions from the preliminary hearing at which Sharman testified. It includes his testimony that he was performing his duties as a correctional officer at the time of the assault. Therefore, this argument is without merit.

The issue regarding whether Sharman was a peace officer or an employee of the Department of Correctional Services is more troublesome. The record shows that Sharman was a correctional officer at the Douglas County Correctional Center. As set forth above, third degree assault on an officer requires, in part, that the person injured be a peace officer or employee of the Department of Correctional Services. See § 28-931.

Nebraska statutes provide that a peace officer is a sheriff, coroner, jailer, marshal, police officer, state highway patrol officer, member of the National Guard on active service by direction of the Governor, or other person with similar authority to arrest. Neb. Rev. Stat. § 49-801 (Reissue 1998). Clearly, Sharman was not a sheriff, coroner, marshal, police officer, state highway patrol officer, member of the National Guard on active service, or other person with similar authority to arrest.

The term "jailer" is defined by statute as the keeper of the jail. Neb. Rev. Stat. § 47-115 (Reissue 1998). According to § 47-115, a "jailer" is either the sheriff, a deputy appointed by the sheriff, or the county board of corrections. Neb. Rev. Stat. § 23-2802 (Reissue 1997) provides that in each county having a population of 150,000 or more inhabitants, the county board "shall" serve as the county board of corrections. Neb. Rev. Stat. § 23-2804 (Reissue 1997) provides that each county board of corrections shall carry out the functions, duties, and responsibilities as provided in chapter 47, article 1. Such duties and responsibilities include acting as the jailer. See § 47-115.

Douglas County has a population of 150,000 or more, and therefore, the Douglas County Board serves as the county board of corrections. At the time of the assault, Sharman was employed by the Douglas County Board of Corrections, which pursuant to the statutes discussed above, is the jailer for the Douglas County Correctional Center.

Unlike a sheriff or deputy, who are actual people, a county board of corrections is a "legal entity," just as a corporation is a

"legal entity," whose duties and responsibilities are carried out by its employees or other agents. See, generally, *Wiekhorst Bros. Excav. & Equip. v. Ludewig*, 247 Neb. 547, 529 N.W.2d 33 (1995) (corporations act through agents, and acts of agents are acts of corporation). Therefore, for the purposes of Nebraska statutes, Sharman herein would be considered a jailer at the time of the assault in this case, and pursuant to § 49-801, a jailer is a peace officer.

Because the factual basis provided by the State, the presentence investigation, and Nebraska statutes establish that Sharman was a peace officer injured by Parks while engaged in the performance of Sharman's official duties, we conclude that the factual basis was sufficient to support Parks' plea of no contest. Therefore, the district court did not abuse its discretion in accepting Parks' plea. We affirm.

### 2. SENTENCE

Next, we address whether the sentence imposed by the district court was excessive. Parks argues that given the steps he has taken to become a productive member of society and the nature of the incident, the sentence imposed was an abuse of discretion.

At the time Parks' offense occurred, third degree assault on an officer was a Class IV felony punishable by 0 to 5 years' imprisonment, a $10,000 fine, or both. Neb. Rev. Stat. §§ 28-105 (Reissue 1995) and 28-931. Therefore, Parks' sentence of 2 to 3 years' imprisonment was within statutory limits.

A sentence imposed within statutory limits will not be disturbed on appeal absent an abuse of discretion. *State v. Harris*, 7 Neb. App. 520, 583 N.W.2d 366 (1998); *State v. Thomas*, 6 Neb. App. 510, 574 N.W.2d 542 (1998). An abuse of discretion occurs where the judge's ruling is clearly untenable and deprives a litigant of a just result in a judicial proceeding. *Harris, supra; Thomas, supra.*

In imposing a sentence, a sentencing judge should consider the defendant's age, mentality, education, experience, and social and cultural background, as well as his past criminal record or law-abiding conduct, motivation for the offense, nature of the offense, and the amount of violence involved in the

commission of the crime. *State v. Chojolan*, 253 Neb. 591, 571 N.W.2d 621 (1997); *State v. Wilson*, 252 Neb. 637, 564 N.W.2d 241 (1997).

A review of the record shows that at the time of the offense, Parks was 26 years old and incarcerated in the Douglas County Correctional Center. He was unemployed at the time of his arrest. His criminal record includes numerous juvenile offenses. As an adult, Parks' convictions include disorderly conduct, three convictions for obstructing an officer, two convictions for theft by receiving stolen property, assault and battery, minor in possession of liquor, seven convictions for operating during suspension, flight to avoid arrest, and possession of crack cocaine.

Based upon our review of the record, we cannot conclude that the sentence of 2 to 3 years' imprisonment was an abuse of discretion at the time imposed. However, in light of recent statutory amendments and the Nebraska Supreme Court's holding in *State v. Urbano*, 256 Neb. 194, 589 N.W.2d 144 (1999), Parks' sentence must be modified. See Neb. Rev. Stat. § 29-2204 (Cum. Supp. 1998).

From the time of Parks' offense through sentencing, Parks' offense was a Class IV felony. See § 28-931. However, following sentencing, certain amendments to § 29-2204 became operative. As amended, § 29-2204 provides that where the criminal offense for which an indeterminate sentence is to be imposed is a Class IV felony, "the court shall fix the minimum and maximum limits of the sentence, but the minimum limit fixed by the court shall not be . . . more than one-third of the maximum term." In this same legislation, the offense of third degree assault on an officer was reclassified from a Class IV felony to a Class IIIA felony. § 28-931 (Cum. Supp. 1998). The operative date of these amendments was July 1, 1998.

In *Urbano, supra,* the Supreme Court addressed the effect of the amendments discussed above on the sentences of defendants such as Parks, whose crimes were reclassified from a Class IV felony to a Class IIIA felony following the commission of the crime but prior to final judgment. According to the *Urbano* court, the amendment's reclassification of certain crimes from Class IV felonies to Class IIIA felonies "classifies [such] crime[s] as more severe and creates a potentially harsher mini-

mum punishment than that which is permitted for Class IV felonies." 256 Neb. at 207, 589 N.W.2d at 154. Therefore, the *Urbano* court held that application of the amendatory terms and corresponding penalties found in the above-mentioned amendments would convert a Class IV felony conviction to a Class IIIA conviction and would amount to an impermissible ex post facto application of the new law. The *Urbano* court concluded that the defendant's conviction remained that of a Class IV felony.

Based on *Urbano, supra*, the crime of third degree assault on an officer, of which Parks was convicted, is a Class IV felony which is not reclassified on appeal to a Class IIIA felony.

The *Urbano* court also addressed the effect of the above-mentioned amendments on Class IV felony convictions for criminal activity that occurred prior to the operative date of the amendments which have not yet proceeded to final judgment. The Supreme Court held that the amendment to § 29-2204 providing for a maximum minimum term of one-third of the maximum term applies to the sentences of defendants such as Parks. See *Urbano, supra*. See, also, *State v. Harris*, 7 Neb. App. 520, 583 N.W.2d 366 (1998).

In order to conform to the terms of § 29-2204 now in effect, the minimum term of Parks' indeterminate sentence cannot exceed 20 months' imprisonment, which is one-third of the statutory maximum punishment of 5 years' imprisonment. See *Urbano, supra*. Therefore, we modify Parks' sentence to 20 months' to 3 years' imprisonment. We leave unchanged the credit given by the district court for time served.

AFFIRMED AS MODIFIED.