IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**

STATE V. WILLIAMS

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,
V.
DAION J. WILLIAMS, APPELLANT.

Filed October 15, 2013.    No. A-12-846.

Appeal from the District Court for Douglas County: W. RUSSELL BOWIE III, Judge. Affirmed.

Thomas C. Riley, Douglas County Public Defender, for appellant.

Jon Bruning, Attorney General, and Kimberly A. Klein for appellee.

INBODY, Chief Judge, and IRWIN and RIEDMANN, Judges.

RIEDMANN, Judge.

## INTRODUCTION

Daion J. Williams appeals his conviction of second degree murder on the grounds that his confession was involuntary and improperly admitted at trial. He raises two issues with his confession. The first issue is that he did not knowingly waive his Fifth Amendment right against self-incrimination when the interrogating officer did not specifically inform him that the court would appoint him an attorney prior to police questioning. The second issue is that the police rendered his confession involuntary by threatening and/or promising leniency in exchange for his confession. We hold that Williams voluntarily waived his right against self-incrimination and that the police did not promise him leniency in exchange for his confession. Accordingly, we affirm Williams' conviction of second degree murder.

## BACKGROUND

The night before he was murdered, Bryant T. Morgan spent the night at Alea Douglas' home in her bedroom. The next day, Morgan went to his job as a bellringer for the Salvation

- 1 -

Army. While he was away, Douglas invited over Williams, with whom she had maintained an "on-again, off-again" relationship for years. Douglas and Williams went upstairs to her bedroom and were in her bed when Morgan unexpectedly came home from work early and walked into the bedroom. The two men exchanged some words about the situation.

Around this time, Williams' friend showed up at the Douglas residence and left with Williams. Morgan walked outside to the porch and sat down in a chair. Williams and his friend went to Williams' stepmother's home, where Williams called Douglas and asked her if Morgan wanted to fight. Williams later returned to Douglas' house with two friends. They went inside for a brief period. As the three were leaving, gunshots were fired at Morgan and he was shot. Douglas' mother and aunt tried to stop Morgan's bleeding while Douglas called the police. Morgan was transported to the hospital, where he was pronounced dead.

The next month, Williams was arrested on the charge of first degree murder, taken into custody, and transported to the Omaha Police Department headquarters. He was placed in a homicide interview room and questioned by Officers Daryl Krause and Candace Phillips and Sgt. Donald Ficenic.

The officers then read Williams his *Miranda* rights from their standard Omaha Police Department's rights advisory form. As part of the standard advisement, Officer Krause informed him that he had a right to an attorney during questioning and that the court would appoint an attorney if he could not afford one. Officers Krause and Phillips questioned Williams for a few hours. Williams initially denied involvement in Morgan's death. Williams ultimately confessed to the murder, however, after Sergeant Ficenic began questioning him and explained to him the various charges he could face and their associated penalties. He also explained to Williams that the difference between the various charges was the justification for the killing and suggested that Morgan might have taken an aggressive action that provoked Williams' response. Williams then confessed to the murder. As he was being arrested, he asked whether he continued to face the charge of first degree murder. Sergeant Ficenic informed him that he would continue to face the same charges "for now," but that his ultimate charges would depend on "how things shake out down the road."

Williams subsequently filed a motion to suppress and exclude the statements he gave to the police from use against him in court. Williams argued that he was not properly advised of his right to counsel and his right against compulsory self-incrimination, that the statements were obtained without a knowing and voluntary waiver of his right to counsel and his right against self-incrimination, and that the statement was the product of threats, coercion, or inducements of leniency. The trial court held a hearing on the motion to suppress.

At the hearing, Officer Krause testified that he read Williams his *Miranda* rights from the standard form and that Williams appeared to understand, did not ask questions, and agreed to speak. The trial court determined that Williams was adequately informed of his *Miranda* rights and that his statements to the police were voluntary. Accordingly, the trial court denied Williams' motion to suppress. The case proceeded to trial.

At trial, Sergeant Ficenic testified about his interrogation of Williams and the State offered the video of the interrogation into evidence. Williams properly renewed his constitutional objection to the statement on the grounds presented at the pretrial hearing on the motion to suppress. Williams also testified in his own defense. He denied shooting Morgan and explained

that he confessed because he believed the police were going to charge him with first degree murder regardless of what he told them. He said that when Sergeant Ficenic discussed the different penalties with Williams, he understood Sergeant Ficenic to be offering him a choice between life in prison or a few years for manslaughter. He explained that the officers' discussion of the evidence they had against him left him no option other than confessing. Williams said that he asked Sergeant Ficenic whether his charges were still the same after the confession, because Sergeant Ficenic suggested Williams tell him it happened in self-defense and he would drop the charges to manslaughter.

The jury convicted Williams of second degree murder and the use of a deadly weapon to commit a felony. Williams was sentenced to 50 to 60 years' imprisonment for second degree murder to be served consecutively with a sentence of 20 years' imprisonment for use of a deadly weapon to commit a felony.

Williams timely filed this appeal.

ASSIGNMENTS OF ERROR

Williams argues on appeal, renumbered, that the trial court erred in denying his motion to suppress his statement to the police because (1) the statement was the product of threats, coercion, or inducement of leniency, and (2) the statement was involuntary because Williams was not sufficiently advised of his right to the appointment of counsel.

ANALYSIS

*Involuntary Waiver of Fifth Amendment Rights.*

Williams argues that the trial court erred in overruling his motion to suppress the statement he gave to police and subsequently admitting the statement at trial, because he was not properly advised of his legal rights prior to giving the statement. In particular, Williams argues that the Omaha Police Department's rights advisory form did not inform him that the court would appoint him an attorney before or during police interrogation if he could not afford one. He challenges the form as insufficient for failing to include that information.

In reviewing a motion to suppress a statement based on its claimed involuntariness--including claims that law enforcement procured it by violating the safeguards established by the U.S. Supreme Court in *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966)--we apply a two-part standard of review. *State v. Nave*, 284 Neb. 477, 821 N.W.2d 723 (2012). We review the trial court's findings of historical facts for clear error. *Id*. Whether those facts meet constitutional standards, however, is a question of law, which we review independently of the trial court's determination. *Id*.

In *Miranda v. Arizona, supra*, the U.S. Supreme Court sought to protect the Fifth Amendment privilege against compelled self-incrimination from the inherently compelling pressures of custodial interrogation. To protect the privilege, the Court required law enforcement officers to give a particular set of warnings to a person in custody before interrogation: that he has a right to remain silent, that any statement he makes may be used as evidence against him, and that he has the right to an attorney, either retained or appointed. *Id*.

In this case, Officer Krause read Williams his rights verbatim from the Omaha Police Department's rights advisory form. Officer Krause informed Williams that he had the right to a

lawyer during questioning and that the court would appoint one if he could not afford one. Williams also indicated that he understood he would be able to speak with an attorney when he informed Officer Phillips that he would need to consult an attorney prior to agreeing to take a lie detector test.

In *State v. Nave, supra*, the Nebraska Supreme Court had considered Williams' exact argument: that the Omaha Police Department's rights advisory form did not sufficiently inform the defendant of his right to be appointed an attorney before and during interrogation. In *State v. Nave*, 284 Neb. at 495, 821 N.W.2d at 737, the Nebraska Supreme Court determined that

> the officer's failure to expressly state that [the defendant] was entitled to appointed counsel before questioning was immaterial. When police told [the defendant] that he had "the right to consult with a lawyer and have the lawyer with him during the questioning," that statement impliedly included the right to consult with the lawyer before the questioning. And that is enough under *Miranda*.

As in *State v. Nave, supra*, the police in this case informed Williams that he had a right to an attorney prior to questioning, which impliedly included the right to consult with the lawyer before the questioning. This warning was sufficient under the guidelines set forth in *Miranda v. Arizona, supra*.

Because Williams received sufficient warning of his constitutional rights, the trial court did not err in overruling his motion to suppress and admitting his statement at trial.

*Involuntary Confession.*

In determining the correctness of a trial court's ruling on a motion to suppress evidence claimed to be constitutionally inadmissible, an appellate court will uphold the trial court's findings of fact unless those findings are clearly erroneous. *State v. Martin*, 243 Neb. 368, 500 N.W.2d 512 (1993). In reviewing a trial court's findings on a suppression motion, an appellate court recognizes the trial court as the finder of fact and takes into consideration that the trial court has observed witnesses testifying regarding such motion. *Id*. An appellate court, therefore, does not reweigh the evidence or resolve conflicts in the evidence. *Id*. Accordingly, a trial court's determination that a defendant's statement was voluntarily made will not be set aside on appeal unless such a determination is clearly erroneous. *Id*.

The Due Process Clause of the U.S. Constitution and the due process clause of the Nebraska Constitution preclude the admissibility of an involuntary confession. See *State v. Martin, supra*. See, also, *Jackson v. Denno*, 378 U.S. 368, 84 S. Ct. 1774, 12 L. Ed. 2d 908 (1964); *State v. Bodtke*, 219 Neb. 504, 363 N.W.2d 917 (1985). The State has the burden to establish that the defendant's statements are voluntary and not coerced. *State v. Chojolan*, 253 Neb. 591, 571 N.W.2d 621 (1997).

A confession is voluntary if it is "'the product of an essentially free and unconstrained choice by its maker.'" *State v. Martin*, 243 Neb. at 376, 500 N.W.2d at 516-17 (1993) (quoting *Culombe v. Connecticut*, 367 U.S. 568, 81 S. Ct. 1860, 6 L. Ed. 2d 1037 (1961)). On the other hand, a confession is involuntary if the declarant's "'will has been overborne and his capacity for self-determination critically impaired.'" *Id*. To properly determine if a defendant confessed because his will was overborne, a court must examine all the circumstances surrounding the confession. *State v. Martin, supra*.

In the circumstance where police obtain a confession in exchange for a promise of leniency, the confession may be inadmissible. *State v. Garner*, 260 Neb. 41, 614 N.W.2d 319 (2000). A police officer does not promise leniency by merely advising that it would be better for the accused to tell the truth. *Id*. Rather, to promise leniency, a police officer must offer to perform or withhold some definite future action, within his control, that will have an impact upon the suspect he is interrogating. *Id*. A confession is, therefore, involuntary if, "'from the perspective of the defendant, [a police officer's] statements included a promise of a benefit which, in the defendant's understanding, the [officer] could either grant or withhold.'" *State v. Martin*, 243 Neb. at 379, 500 N.W.2d at 518 (quoting *U.S. v. Fraction*, 795 F.2d 12 (3d Cir. 1986)). Similarly, a confession is involuntary and therefore inadmissible if it is coerced by threats, including the threat of a harsh punishment. *State v. Chojolan*, 253 Neb. 591, 571 N.W.2d 621 (1997).

Our review of the record reveals that the police did not expressly or impliedly threaten or promise to take any type of action in exchange for Williams' confession. Sergeant Ficenic told Williams that although he could prove Williams killed Morgan, he did not know why. He advised Williams that his reason for his actions would determine whether he was convicted of murder in the first degree or second degree or manslaughter and informed Williams of the range of penalties associated with those charges. Rather than threatening or promising Williams anything, Sergeant Ficenic explained to Williams that his explanation would be taken into account, "not tonight by us, it will be taken into consideration by the judge, the prosecutor, and the jury." Sergeant Ficenic also cautioned Williams that he could not put himself in the position of the judge, prosecutor, or jury and tell Williams what they would think of his explanation. He did state, however, that in his opinion, it would make sense if Williams were acting in self-defense. Sergeant Ficenic also told Williams that his explanation for his actions would become suspect if he did not provide it that night.

The police officers' statements did not render Williams' confession involuntary merely because they referenced different potential penalties. See *State v. Garner, supra*. Although Williams testified that he understood Sergeant Ficenic to be offering him the choice between life in prison or a few years in prison, Sergeant Ficenic warned him that he did not know what the judge, jury, or prosecutor would think of Williams' explanation. Sergeant Ficenic promised nothing. For this reason, it does not matter that the police informed Williams that they thought he acted in self-defense, because they stated that they would not be the ones to reduce Williams' charge. Williams made a calculated decision to confess to killing Morgan and to justify his actions in the hopes that his confession would bolster his credibility and result in a lesser charge. Unfortunately for Williams, the gamble did not pay off as well as he hoped it might.

Even if the police officers' tactics placed Williams in a position where, as he suggests, he had no choice but to confess because he believed that the police could prove he murdered Morgan, we cannot say that Williams' confession was involuntary. The police laid out the evidence and the possible charges, and Williams chose to proceed a certain way in the hopes that it would render the best result. The police implied that a better result was a possibility but did not promise that a better result would occur.

Williams argues that we must view his case with special caution because he was 17 years old at the time of his confession. We must take special care to ensure that a juvenile's admission

is voluntary. *State v. Goodwin*, 278 Neb. 945, 774 N.W.2d 733 (2009). In this case, however, although Williams was 17, he demonstrated familiarity with the proceedings. He stated that he understood his rights from his prior experiences with police officers and the legal system. Additionally, when asked whether or not he wanted to take a lie detector test, Williams effectively exercised his constitutional rights by informing the police that he would first need to speak with his attorney.

Accordingly, the trial court did not clearly err in finding Williams' confession was voluntary nor did it err in admitting his confession at trial.

## CONCLUSION

The trial court did not clearly err in admitting Williams' confession into evidence. Although Williams was not specifically informed that he had a right to an appointed attorney prior to police interrogation, the police did advise him that he had a right to an attorney for questioning and that the court would appoint him an attorney if he could not afford one. This advisement sufficiently conveyed that Williams had a right to an appointed attorney prior to interrogation. Additionally, Williams' confession was not rendered involuntary by police statements that the various charges and penalties Williams could face hinged on his explanation for the crime. Accordingly, we affirm Williams' conviction of second degree murder.

AFFIRMED.