STATE OF NEBRASKA, APPELLEE, V. AARON T. PATTNO, APPELLANT.

579 N.W. 2d 503

Filed June 5, 1998.   No. S-97-1147.

Marc B. Delman for appellant.

Don Stenberg, Attorney General, and David T. Bydalek for appellee.

WHITE, C.J., CAPORALE, WRIGHT, GERRARD, STEPHAN, and McCORMACK, JJ.

PER CURIAM.

### NATURE OF CASE

Aaron T. Pattno pled guilty to sexual assault of a child, in violation of Neb. Rev. Stat. § 28-320.01 (Cum. Supp. 1996), a Class IV felony. He claims that the sentence imposed was excessive because the judge read a passage from the Bible during sentencing which disparaged homosexuality and, therefore, manifested bias against Pattno because of his sexual orientation.

### SCOPE OF REVIEW

A sentence imposed within statutory limits will not be disturbed on appeal absent an abuse of discretion by the trial court. *State v. Chojolan*, 253 Neb. 591, 571 N.W.2d 621 (1997).

An abuse of discretion takes place when the sentencing court's reasons or rulings are clearly untenable and unfairly deprive a litigant of a substantial right and a just result. *Id.*

### FACTS

Pattno, a 25-year-old male, met a 13-year-old boy referred to as "M.B." through a "chat room" on the Internet. Pattno met

secretly with M.B. for several months, and the two made plans for two overnight visits. During the second overnight visit, Pattno and M.B. kissed, undressed, and fondled each other.

On August 12, 1997, Pattno pled guilty to sexual assault of a child. A presentence investigation (PSI) was requested by the trial judge. The PSI revealed that Pattno had numerous traffic violations, including speeding, license suspension, and driving without an operator's license. Pattno had also been charged with writing bad checks on two occasions in 1996. Pattno had participated in a Big Brother/Big Sister program; worked for the Latch Key Program for the bicounty YMCA in Belleville, Illinois; and taught seventh graders in a religious education program. The PSI disclosed no prior history of child molestation or sexual assault.

A "sexual adjustment inventory" conducted on Pattno indicated signs of pedophilia. The report stated in part: "This client's response pattern on the Child Molest Scale is in the Problem Risk (70 to 89th percentile) range. Problematic child molest behavioral (pedophilia) indicators are present. Review court-related records carefully for prior sex-related offenses or convictions."

The PSI did not contain a sentencing recommendation because Pattno did not meet the threshold requirements to be considered for "Intensive Supervision Probation." The PSI did indicate that if probation was selected by the trial judge, certain terms were recommended. The report recommended that Pattno not be allowed to have unsupervised contact with anyone under the age of 16 and that he continue counseling, complete an offender's work program, tour the Lincoln Regional Center, and refrain from having a personal computer or any other electronic device that could be used to access electronic communications in his home.

A search of Pattno's home following his arrest disclosed pornographic material on the hard drive of his computer showing males, some teenagers, in erotic poses. Several e-mail communications between Pattno and M.B. were also discovered. The e-mail suggested that Pattno and M.B. shared a mutual affection for each other. There is evidence which suggests that Pattno continued to have contact with M.B. even after he was

arrested. Pattno allegedly went to the town where M.B. and his family vacationed and secretly met with M.B. There is no evidence which discloses that Pattno and M.B. had sexual contact after Pattno was arrested.

During sentencing on October 31, 1997, the trial judge noted that Pattno had met the victim over the Internet, and the judge then read a portion of Pattno's police statement. The statement contained details about the romantic relationship which had developed between Pattno and M.B., in addition to Pattno's account of the sexual contact with M.B.

Subsequently, the trial judge read the following biblical excerpt:

"Ever since the creation of the world his invisible nature, namely, his external power and deity, has been clearly perceived in the things that have been made. So they are without excuse; for although they knew God they did not honor him as God or give thanks to him as God, but they became futile in their thinking and their senseless minds were darkened. Claiming to be wise, they became fools, and exchanged the glory of the immortal God for images resembling mortal man or birds or animals or reptiles.

"Therefore God gave them up in the lusts of their hearts to impurity, to the dishonoring of their bodies among themselves, because they exchanged the truth about God for a lie and worshiped and served the creature rather than the Creator, who is blessed for ever [sic]. Amen.

"For this reason God gave them up to dishonorable passions. Their women exchanged natural relations for unnatural, and the men likewise gave up natural relations with women and were consumed with passion for one another, men committing shameless acts with men and receiving in their own persons the due penalty for their error."

Following the reading of the biblical passage, the trial judge stated that he had considered the circumstances of the case and the "nature . . . of the defendant" and found that imprisonment was necessary to protect the public and not to depreciate the seriousness of the crime. Pattno was sentenced to not less than 20 months' nor more than 5 years' imprisonment.

## ASSIGNMENTS OF ERROR

Pattno claims the trial judge erred by expressing his religious views during sentencing, by expressing a bias against Pattno's sexual orientation during sentencing, and by not recusing himself from the sentencing.

## ANALYSIS

Our ultimate determination is whether the trial judge abused his discretion by imposing a sentence that was based upon the judge's personal bias against Pattno's sexual orientation. A sentence imposed within the statutory limits will not be disturbed on appeal absent an abuse of discretion by the trial court. An abuse of discretion takes place when the sentencing court's reasons or rulings are clearly untenable and unjustly deprive a litigant of a substantial right and a just result. *State v. Chojolan*, 253 Neb. 591, 571 N.W.2d 621 (1997).

Pattno argues that this court should presume that the trial judge was biased because his statements during sentencing violated the Nebraska Code of Judicial Conduct. The Code of Judicial Conduct demands that judges conform to a higher standard of conduct than is expected of lawyers or other persons in society. *In re Complaint Against Empson*, 252 Neb. 433, 562 N.W.2d 817 (1997). Pattno relies upon Canon 1 ("A Judge Shall Uphold the Integrity and Independence of the Judiciary"), Canon 2 ("A Judge Shall Avoid Impropriety and the Appearance of Impropriety in all of the Judge's Activities"), Canon 3 ("A Judge Shall Perform the Duties of Judicial Office Impartially and Diligently"), and Canon 3B(5) ("A judge shall perform judicial duties without bias or prejudice. A judge shall not, in the performance of judicial duties, by words or conduct manifest bias or prejudice, including but not limited to bias or prejudice based upon race, sex, religion, national origin, disability, age, sexual orientation or socioeconomic status, and shall not permit staff, court officials and others subject to the judge's direction and control to do so").

In summary, Pattno alleges that the trial judge violated the Code of Judicial Conduct and imposed a sentence which constituted an abuse of discretion. Pattno contends that the judge

pronounced the sentence in a manner which raised a question as to whether the judge's personal bias affected the severity of his sentence. Pattno argues that his clean criminal record, the unlikelihood of reoffense, and the circumstances surrounding his crime suggest that probation was an appropriate punishment.

A defendant seeking to disqualify a judge on the basis of bias or prejudice bears the heavy burden of overcoming the presumption of judicial impartiality. *State v. Boppre*, 252 Neb. 935, 567 N.W.2d 149 (1997). In Nebraska, there is no clear rule regarding the proof a litigant must present before a judge is found to be biased. In some instances, we have held that actual bias must be shown. In other instances, we have allowed the litigant to presume that the judge was biased if the appearance of impropriety was present.

In *State v. Barker*, 227 Neb. 842, 420 N.W.2d 695 (1988), the impartiality of a judge was at issue when, prior to sentencing, the judge initiated an ex parte communication with the parents of the murder victim. The issue was whether the ex parte meeting caused the judge to have "some preconceived opinion or disposition toward the sentence to be imposed . . . ." *Id.* at 853, 420 N.W.2d at 702. We held that the ex parte communication raised questions about the judge's impartiality and that, therefore, the judge had to recuse himself if requested to do so by the parties.

In *Franks v. Franks*, 181 Neb. 710, 150 N.W.2d 252 (1967), we suggested that the appearance of impropriety may be sufficient to persuade a judge to disqualify himself. We stated that the proper administration of the law demands not only that judges refrain from actual bias, but that they avoid all appearances of unfairness.

However, in *State v. Ellefson*, 231 Neb. 120, 435 N.W.2d 653 (1989), we held that there must be a showing of actual prejudice before a judge will be declared biased. In *Ellefson*, the defendant, following his conviction, wrote letters to the judge, generally declaring that he had been wrongfully convicted. He then moved to have the court recuse itself from hearing the motion for postconviction relief on the grounds that the correspondence was of a threatening and accusatory nature and that the judge was biased against him and should not have heard the motion

for postconviction relief. We held that the defendant had the burden of showing that the court was actually biased or prejudiced and, hence, it was not sufficient to merely show that the court could have been biased or that an appearance of impropriety was created.

In *Dowd v. First Omaha Sec. Corp.*, 242 Neb. 347, 495 N.W.2d 36 (1993), we addressed what level of proof was needed to establish that an arbitrator was biased. We established that the partiality of an arbitrator was established when a " 'reasonable person would have to conclude that an arbitrator was partial to one party to the arbitration.' " *Id.* at 358, 495 N.W.2d at 43. We rejected the claim that a party claiming prejudice had to present " 'factual proof of bias.' " *Id.* We noted that one problem with strict application of the factual proof of bias approach is that absent an outright admission by a biased party, it may be impossible to show. We rejected the notion that partiality could be proved by the mere " 'appearance of bias' " and, instead, adopted the "reasonable person" test. *Id.* We noted that judges and arbitrators were both subject to the same ethical standards and proceeded to address whether an arbitrator's failure to disclose a possible conflict of interest proved bias or prejudice against one party.

The federal courts have consistently applied the standard that we adopted in *Dowd* for determination of whether a judge was biased against a defendant. Pursuant to 28 U.S.C. § 455(a) (1994), a judge shall be disqualified if a reasonable person who knew the circumstances of the case would question the judge's impartiality under an objective standard of reasonableness, even though no actual bias or prejudice was shown. See *Renteria v. Schellpeper*, 936 F. Supp. 691 (D. Neb. 1996). Therefore, under federal law, recusal is necessary if a reasonable person would harbor doubts about the judge's impartiality. See, also, *Liteky v. United States*, 510 U.S. 540, 114 S. Ct. 1147, 127 L. Ed. 2d 474 (1994) (proposing objective test of impartiality); *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 108 S. Ct. 2194, 100 L. Ed. 2d 855 (1988) (holding that partiality is determined by whether reasonable person, knowing all facts, would question judge's impartiality); *U.S. v. Jordan*, 49 F.3d 152 (5th Cir. 1995) (holding that judge should have been recused

because reasonable person would harbor doubts about judge's impartiality); *U.S. v. Cooley*, 1 F.3d 985 (10th Cir. 1993) (holding that inquiry is whether reasonable person would harbor doubts as to judge's impartiality). But see *U.S. v. Nelson*, 952 F.2d 180 (8th Cir. 1991) (holding that defendant did not establish that judge had pervasive personal bias against defendant, and so impartiality was not questioned).

The reasonable person test adopted by this court in *Dowd* is a rational means of determining whether a judge is biased against a defendant. Therefore, in order for Pattno to prove that the trial judge was biased against him and that the judge should have recused himself from imposing a sentence, Pattno must demonstrate that a reasonable person who knew the circumstances of the case would question the judge's impartiality under an objective standard of reasonableness, even though no actual bias or prejudice was shown.

Pattno argues that the reading of the biblical scripture by the trial judge proved that he was biased against Pattno. The State argues that the judge's statements at sentencing did not reflect his personal views regarding homosexuality, but were merely personal observations made by the judge or, at least, were justified commentary on the heinousness of Pattno's crime. The State contends that since the sentence imposed on Pattno falls within the statutory guidelines, it is valid.

In *U.S. v. Bakker*, 925 F.2d 728 (4th Cir. 1991), the defendant was convicted of mail fraud, wire fraud, and conspiracy for encouraging persons to donate money to his television evangelism program. At sentencing, the judge stated: "'[Bakker] had no thought whatever about his victims and those of us who do have a religion are ridiculed as being saps from [sic] money-grubbing preachers or priests.'" (Emphasis omitted.) *Id.* at 740. The court of appeals, while noting that a sentencing judge has broad discretion in rendering a sentence, noted that such discretion must be exercised within the boundaries of due process. The court held that the sentencing judge exceeded these boundaries by imposing a sentence based on impermissible considerations. The court noted that a judge may not take into consideration a party's race or national origin in sentencing without violating due process. The court held that "similar principles

apply when a judge impermissibly takes his own religious characteristics into account in sentencing." *Id.* The court stated:

> Courts, however, cannot sanction sentencing procedures that create the perception of the bench as a pulpit from which judges announce their personal sense of religiosity and simultaneously punish defendants for offending it. Whether or not the trial judge has a religion is irrelevant for purposes of sentencing. . . .
>
> . . . .
>
> Yet, the fact remains that this case involves the explicit intrusion of personal religious principles as the basis of a sentencing decision; at least, that is not an unfair reading of the trial court's comments in this case. We recognize that a trial judge on occasion will misspeak during sentencing and that every ill-advised word will not be the basis for reversible error. In this case, however, our review of the sentencing transcript reveals comments that are, in the end, too intemperate to be ignored. Because an impermissible consideration was injected into the sentencing process, we must remand the case.

*Id.* at 740-41. We find the reasoning of *Bakker* helpful to our consideration of the trial judge's conduct in sentencing Pattno. Due process requires that sentencing judges consider only relevant information as the basis for a sentence. See *State v. Clear*, 236 Neb. 648, 463 N.W.2d 581 (1990).

Since our focus is whether a reasonable person under these circumstances would question the trial judge's impartiality, we examine the facts and circumstances in that light. All crimes in Nebraska are statutory. Similarly, sentences imposed upon defendants convicted of a crime are also statutory. No statute in this state criminalizes sexual contact between consenting adults of the same gender. Thus, Pattno's crime is that he had sexual contact with a minor; not that he had sexual contact with another male. Therefore, the biblical scripture which the judge read was not relevant to the crime to which Pattno pled guilty, and it should not have been considered by the judge in determining an appropriate sentence.

Also problematic with the trial judge's use of biblical scripture is the fact that from its very inception, this country has recognized the importance of separation of church and state.

Allowing a court to recite scripture, and thereby proclaim its interpretation of that scripture, implies that the court is advancing its own religious views from the bench.

Statements of religious expression by a judge or remarks which suggest that the judge dislikes the crimes committed by a defendant do not necessarily evidence improper bias or prejudice. See, *Six v. Delo*, 885 F. Supp. 1265 (E.D. Mo. 1995), *affirmed* 94 F.3d 469 (8th Cir. 1996); *United States v. Baer*, 575 F.2d 1295 (10th Cir. 1978); *Poe v. State*, 341 Md. 523, 671 A.2d 501 (1996). However, courts are well advised to rely upon the statutory guidelines for imposing sentences. Reliance upon irrelevant material, such as the court's own religious beliefs, could convince a reasonable person that a court was biased or prejudiced.

The problem is that during Pattno's sentencing, the trial judge read a biblical scripture and then stated that he had considered the circumstances and the "nature . . . of the defendant" in reaching the sentence of not less than 20 months' nor more than 5 years' imprisonment. A reasonable person who heard the judge's comments could have questioned the judge's impartiality.

In imposing a sentence, a sentencing judge should consider the defendant's age, mentality, education, experience, and social and cultural background, as well as his or her past criminal record or law-abiding conduct, motivation for the offense, nature of the offense, and the amount of violence involved in the commission of the crime. *State v. Wilson*, 252 Neb. 637, 564 N.W.2d 241 (1997). A sentencing judge has broad discretion as to the source and type of information, including personal observations, which may be used as assistance in determining the kind and extent of the punishment to be imposed. See *State v. Dean*, 237 Neb. 65, 464 N.W.2d 782 (1991). However, relying upon one's personal religious beliefs as a basis for a sentencing decision injects an impermissible consideration in the sentencing process. See *U.S. v. Bakker*, 925 F.2d 728 (4th Cir. 1991).

When we examine the sentence in the context of Pattno's age, mentality, education, experience, social and cultural background, and past criminal record; the nature of the offense; and the amount of violence involved in the commission of the crime, the following facts are significant: At the time of the

occurrence, the victim was 13 years old. Although Pattno had no history of prior child molestation or sexual assault, the PSI revealed that he has had repeated contact with children, and the sexual adjustment inventory conducted revealed that he showed signs of pedophilia. There is evidence which suggests that Pattno continued to have contact with the victim even after he was arrested. The PSI did not contain a sentencing recommendation because Pattno failed to meet the threshold requirements to be considered for "Intensive Supervision Probation."

A Class IV felony is punishable by a maximum of 5 years' imprisonment, a $10,000 fine, or both. There is no minimum sentence of incarceration or fine required. As such, Pattno's sentence is clearly within the statutory limits and generally, in view of such facts, would not be an abuse of discretion.

However, because the trial judge interjected his own religious views immediately prior to sentencing, a reasonable person could conclude that the sentence was based upon the personal bias or prejudice of the judge. If a judge's comments during sentencing could cause a reasonable person to question the impartiality of the judge, then the defendant has been deprived of due process and the judge has abused his or her discretion.

Therefore, we vacate the sentence imposed upon Pattno and remand the cause with directions that he be resentenced by a different judge.

SENTENCE VACATED, AND CAUSE
REMANDED FOR RESENTENCING.

CONNOLLY J., not participating.