STATE OF NEBRASKA, APPELLEE, v. JOHN HURST, APPELLANT.
594 N.W. 2d 303

Filed April 20, 1999.    No. A-97-1299.

Bradley Gianakos, Deputy Adams County Public Defender, for appellant.

Don Stenberg, Attorney General, and David T. Bydalek for appellee.

SIEVERS and MUES, Judges, and HOWARD, District Judge, Retired.

MUES, Judge.

## INTRODUCTION

Officers responded to the residence of John Hurst, a 23-year-old male, on reports of a possible suicidal male. While officers were attempting to speak to Hurst, he struck one of the officers in the face. Hurst was then placed under arrest and put in the patrol car, where he proceeded to kick out a window. Hurst was subsequently charged with assault on an officer in the third degree, a Class IV felony; resisting arrest, a Class I misdemeanor; and criminal mischief, a Class III misdemeanor. After a trial by jury, Hurst was convicted of all three charges. He appeals, alleging that the evidence is insufficient to support his convictions in that his intoxication and insanity defense compelled a finding of innocent on all three charges.

## BACKGROUND

On the morning of November 11, 1996, at approximately 7:25 a.m., Officer Lyle Stovall was dispatched to the residence

of Geraldine (Jerry) and Harry Hurst to conduct a welfare check. Stovall proceeded to the residence but was unable to make contact with anyone. Approximately 30 minutes later, Stovall was again directed to the same residence on a report that someone from the Hurst residence had placed a telephone call to a man named "Davis" and informed Davis that he was "Johnny Policeman" and was "going to drink himself to death."

When Stovall and his officer trainee, Curtis Vance, arrived at the Hurst residence, they observed Jerry running toward a neighbor's house. Jerry was in her nightgown and was being chased by her grandson, Hurst. As Stovall and Vance proceeded toward the two people, they observed that Hurst had reached the neighbor's door ahead of Jerry and was standing with his back against the door.

When Hurst observed the officers, he proceeded toward them, yelling, "[G]et the fuck off of my property. I'm going to kill you[,] you fucking pigs." Stovall informed Hurst that he just wanted to talk to him. Hurst continued yelling at the officers to get off his property and then turned and ran into Jerry and Harry's garage.

Officers then questioned Jerry about the preceding events. Jerry was hysterical and informed the officers that Hurst "had gone crazy." Jerry also informed the officers that the first time the officers had gone to the residence, Hurst had grabbed a fillet knife and told Jerry and Harry that if the officers came into the house, he would use the knife. Because of the frigid weather and Jerry's light clothing, Stovall requested that Vance go back to the patrol car and get a coat for her.

Stovall was attempting to calm Jerry down when he heard someone in the front yard yelling, "[Y]ou want a piece of me? Come on, I'll kill you." Stovall was approaching the front yard and observed Hurst "walking aggressively" toward Vance. Stovall got behind Hurst and called his name. Hurst turned around, ran toward Stovall, and punched him on the left side of his face.

Stovall was able to get Hurst off balance, and he and Vance placed Hurst under arrest. It took both officers to get Hurst handcuffed, because he was "kicking and flaying around with his legs . . . trying to kick at both officers." The officers then

proceeded to walk Hurst to the patrol car. Hurst continued kicking at the officers and "[d]oing whatever he could try to do to get out of [their] grasp." Once the officers were finally able to get Hurst in the patrol car, Stovall went back to the house to get more information from Jerry. Vance stayed by the patrol car.

While Stovall was talking to Jerry, he was attempting to keep an eye on Vance and Hurst. Stovall observed Hurst kicking at the door of the patrol car and heard Vance radio for assistance. Stovall ran outside just in time to see Hurst kick the window out of the car. Some of the flying glass hit Vance in the face.

Hurst was subsequently transported to the hospital and placed under emergency protective custody. At the time of admission, in order to fully assess Hurst's mental condition, blood was drawn from him to determine if he had been drinking or was on drugs. It was determined that Hurst had a blood alcohol content of .144. Hurst underwent a psychological assessment, and it was recommended that he receive inpatient psychiatric treatment.

Hurst was subsequently charged with assault on an officer in the third degree, a Class IV felony; resisting arrest, a Class I misdemeanor; and criminal mischief, a Class III misdemeanor. A jury trial was held November 4 and 5, 1997, and Hurst was found guilty of all three charges. Hurst was sentenced to 30 months' imprisonment on count I, 6 months' imprisonment on count II, and 6 months' imprisonment on count III. The sentences were ordered to be served concurrently. Hurst was also ordered to pay court costs and restitution. Hurst's motion for new trial was denied, and he now appeals.

## ASSIGNMENTS OF ERROR

Hurst alleges the district court erred in not granting his motion for new trial, in refusing to place Hurst on probation, and in imposing an excessive sentence.

## STANDARD OF REVIEW

A motion for new trial is addressed to the discretion of the trial court, whose decision will be upheld in the absence of an abuse of that discretion. *Carpenter v. Cullan*, 254 Neb. 925, 581 N.W.2d 72 (1998); *Hartwig v. Oregon Trail Eye Clinic*, 254 Neb. 777, 580 N.W.2d 86 (1998).

In reviewing a criminal conviction, an appellate court does not resolve conflicts in the evidence, pass on the credibility of the witnesses, or reweigh the evidence; such matters are for the finder of fact, and a conviction will be affirmed, in the absence of prejudicial error, if the properly admitted evidence, viewed and construed most favorably to the State, is sufficient to support the conviction. *State v. Hill*, 254 Neb. 460, 577 N.W.2d 259 (1998); *State v. Howard*, 253 Neb. 523, 571 N.W.2d 308 (1997).

A sentence imposed within statutory limits will not be disturbed on appeal absent an abuse of discretion by the trial court. *State v. Pattno*, 254 Neb. 733, 579 N.W.2d 503 (1998).

## DISCUSSION

*Sufficiency of Evidence.*

Hurst first argues that the district court erred in denying his motion for new trial, because the evidence established that he was psychotic at the time of the incident and was "unable to understand right from wrong and unable to understand the nature of his actions." Brief for appellant at 6.

At trial, the jury was informed of the elements of each crime charged and instructed that the State had the burden to prove each element beyond a reasonable doubt. The jury was further instructed that if it found that the State had proved each element, then the jury must go on to consider Hurst's defense that he was insane. The elements of the insanity defense were given to the jury, and it was instructed that Hurst had the burden of proving the elements by the greater weight of the evidence.

■ The two elements of the defense of insanity are (1) that the defendant had a mental disease and (2) that the defendant did not understand the nature and consequences of his actions or did not know the difference between right and wrong with respect to what he was doing. See NJI2d Crim. 7.0. See, also, *State v. Johnson*, 4 Neb. App. 776, 551 N.W.2d 742 (1996). Implicit in the jury's verdict is a finding that Hurst failed to prove either one or both of these elements.

Because it is dispositive of this issue, we begin by addressing the second prong of the insanity defense. At trial, Hurst introduced evidence that prior to the date in question, he had been hospitalized on several occasions and had been diagnosed as

having "alcohol dependence, cannabis dependence, antisocial personality disorder, and adjustment disorder." After being hospitalized in relation to the current charges, Hurst was diagnosed with schizophreniform disorder. Records also indicate that Hurst was treated with antipsychotic medications while in the hospital.

Hurst called Dorothy Van Metre to testify on his behalf. Van Metre has a Ph.D. degree in clinical psychology and interviewed Hurst when he was initially brought to the hospital. She testified that she had "had [Hurst's] case a couple of times." Van Metre indicated that when Hurst was hospitalized, he was given a series of tests to assess his mental condition. In Van Metre's psychological evaluation of Hurst, she indicated that she felt further testing was necessary to rule out schizoaffective disorder. Van Metre averred that a person with this disorder would not be in touch with reality at all times.

During cross-examination, Van Metre acknowledged that Hurst may have tried to falsify his MMPI (Minnesota Multiphasic Personality Inventory) score and explained that Hurst's outward manifestations and behavior did not correspond with his self-reporting. In her report, Van Metre indicated that it was "possible that this test was used as part of [Hurst's] campaign to avoid being imprisoned, especially in the penitentiary." The report further indicates that Hurst had "admitted that he was determined not to go to the penitentiary in Lincoln. He said he thought if he acted crazy he might not have to go to the pen." When questioned about Hurst's sanity, Van Metre opined within a reasonable degree of psychological certainty that Hurst was able to understand right from wrong and understand the nature of his actions at the time in question.

Dr. Essien A. Essien, the admitting psychiatrist at the hospital, also testified. Essien indicated that he saw Hurst on a daily basis from November 15 to December 24, 1996. Essien also opined within a reasonable degree of psychiatric certainty that Hurst was able to understand right from wrong and understand the nature of his actions at the time in question.

It was on this evidence [testimony of psychiatrist] that the jury concluded that the defendant was sane. The credibility and weight to be given testimony is a matter for the

evaluation and determination of the jury. [Citation omitted.] The defense of insanity when interposed by an accused is a question of fact for the jury. [Citation omitted.] The verdict of the finder of fact on the issue of insanity will not be disturbed unless there is insufficient evidence to support such a finding.

*State v. Ryan*, 233 Neb. 74, 117-18, 444 N.W.2d 610, 639 (1989).

The evidence cited is sufficient to support the jury's findings, and the district court did not abuse its discretion in refusing to grant a new trial on this issue.

Hurst next argues that his "state of intoxication rendered him unable to form the requisite intent necessary for Count II, Resisting Arrest." Brief for appellant at 6.

In addition to the jury instructions outlined above, the jury also was informed that there was evidence that Hurst was intoxicated at the time that the crimes charged were committed, and it was instructed that it could consider Hurst's alcohol and/or drug use in deciding whether Hurst had the requisite intent.

■ " '[V]oluntary intoxication is ordinarily not a justification or excuse for crime, but excessive intoxication as the result of which a person is wholly deprived of reason may prevent one from having the intent charged. . . .' " *State v. Reynolds,* 235 Neb. 662, 692, 457 N.W.2d 405, 423-24 (1990) (quoting *State v. Cain,* 223 Neb. 796, 393 N.W.2d 727 (1986)).

The evidence indicated that 30 minutes after the alleged incident, Hurst had a blood alcohol content of .144. Van Metre opined within a reasonable degree of psychological certainty that although Hurst had been drinking, he was not so intoxicated that he was devoid of reason. Essien testified that when he was questioning Hurst about the events in question, Hurst informed him that "he [Hurst] put up a good fight with the police because he didn't want them to come and take him away." As discussed above, both Van Metre and Essien opined that Hurst understood the nature of his actions at the time of the incident.

Stovall and Vance were in uniform and in a marked patrol car when they arrived at the Hurst residence. Once Hurst was placed under arrest, he attempted to kick the officers, was flailing around, and kept saying that "he wasn't going back to jail."

From this evidence, the jury could have concluded that Hurst was not so intoxicated that he was "wholly deprived of reason" and that Hurst was able to form the requisite intent to resist arrest.

*Excessive Sentence.*

Hurst's final argument is that the "district court abused its discretion in imposing a prison sentence of not less than two (2) nor more than five (5) years and in refusing to place [Hurst] on probation." Brief for appellant at 8.

Hurst is mistaken as to his sentence. The record reflects that Hurst was sentenced to 30 months' imprisonment on count I, assault on an officer in the third degree; 6 months' imprisonment on count II, resisting arrest; and 6 months' imprisonment on count III, criminal mischief. The sentences were to be served concurrently.

In imposing a sentence, a sentencing judge should consider the defendant's age, mentality, education, experience, and social and cultural background, as well as his or her past criminal record or law-abiding conduct, motivation for the offense, nature of the offense, and the amount of violence involved in the commission of the crime. *State v. Pattno,* 254 Neb. 733, 579 N.W.2d 503 (1998). A sentence imposed within statutory limits will not be disturbed on appeal absent an abuse of discretion by the trial court. *State v. Hill,* 255 Neb. 173, 583 N.W.2d 20 (1998).

Hurst has a fairly extensive criminal history, including possession of alcohol by a minor, possession of a controlled substance with intent to deliver, possession of drug paraphernalia, and violation of a protection order. Hurst's record also includes prior arrests for obstructing justice, resisting arrest, and assault on an officer. In fact, less than 1 year prior to this incident, Hurst was convicted of assaulting an officer and ordered to serve 18 months' imprisonment.

Hurst has received treatment for drug and alcohol abuse on several different occasions. He still continues to drink. When questioned about the events leading to the current charges, Hurst stated that he was "drunk" and "blacked out." In the medical records that were admitted into evidence, one of the doctors

noted that Hurst "refused to take any type of medication given to him to assist him in his hostile and agitated behaviors. Despite all the efforts to assist him, [Hurst] chose to be a behavioral problem and was quite proud of it."

Given these facts, we find that the district court did not abuse its discretion in sentencing Hurst. However, as the State aptly points out, Hurst's sentence on the criminal mischief conviction exceeds that authorized by statute. Hurst was charged with criminal mischief of less than $100. This is a Class III misdemeanor and carries a maximum penalty of 3 months' imprisonment. See Neb. Rev. Stat. §§ 28-519 and 28-106 (Reissue 1995). Accordingly, we find the district court abused its discretion in sentencing Hurst to serve 6 months' imprisonment on this conviction, and we modify it to 3 months' imprisonment pursuant to the authority of Neb. Rev. Stat. § 29-2308 (Reissue 1995).

■ Additionally, the sentencing guidelines have been amended since the time of Hurst's sentencing. At the time Hurst was sentenced, a court could impose a sentence for a definite term of years despite the fact that the statute then in effect did not expressly address sentences for a definite term of years. See *State v. DuBray*, 5 Neb. App. 496, 560 N.W.2d 189 (1997). In 1997, the Legislature passed 1997 Neb. Laws, L.B. 364. This bill, inter alia, established a new class of felonies, Class IIIA, and provided that certain crimes that were previously classified as Class IV felonies were amended to Class IIIA. Included was the crime of third degree assault on a peace officer. See Neb. Rev. Stat. § 28-931 (Cum. Supp. 1998). L.B. 364 also amended Nebraska's indeterminate sentence statute so that it provided that if a defendant was sentenced to a definite term of years, "the maximum term of the sentence shall be the term imposed by the court and the minimum term shall be the minimum sentence provided by law." Neb. Rev. Stat. § 29-2204(a)(ii) (Supp. 1997). The bill further imposed a mandatory 6-month minimum imprisonment for Class IV and IIIA felonies. Neb. Rev. Stat. § 28-105 (Supp. 1997). These changes became operative July 1, 1998.

In 1998, the Legislature passed 1998 Neb. Laws, L.B. 1073 and L.B. 1266. L.B. 1266, effective July 15, 1998, inter alia,

removed the mandatory minimum sentence for Class IIIA and IV felonies. L.B. 1073, effective April 15, 1998, inter alia, amended § 29-2204. Although the language in the section dealing with indeterminate and determinate sentences has changed slightly, it continues to provide that if a sentence is imposed for a definite term of years "the maximum term of the sentence shall be the term imposed by the court and the minimum term shall be the minimum sentence provided by law." 1998 Neb. Laws, L.B. 1266.

The law is well settled in Nebraska that where a criminal statute is amended by mitigating the punishment, after commission of a prohibited act but before final judgment, the punishment is that provided by the amendatory act unless the Legislature has specifically held otherwise. *State v. Urbano*, 256 Neb. 194, 589 N.W.2d 144 (1999); *Jones v. Clarke*, 253 Neb. 161, 568 N.W.2d 897 (1997); *State v. Groff*, 247 Neb. 586, 529 N.W.2d 50 (1995); *State v. Schrein*, 247 Neb. 256, 526 N.W.2d 420 (1995); *State v. Harris*, 7 Neb. App. 520, 583 N.W.2d 366 (1998). A sentence is not a final judgment until the entry of a final mandate of an appellate court if an appeal is taken. *State v. Urbano, supra.* The amendment in the present case occurred after the criminal activity, but prior to the final judgment. Under the newly amended statute, a sentence for a definite term of years becomes an indeterminate sentence in which the maximum term of the sentence is the term imposed by the court and the minimum term is the minimum sentence provided by law. See *State v. Blazek*, 199 Neb. 466, 259 N.W.2d 914 (1977) (interpreting prior statute with language identical to that in § 29-2204(1)(B)).

Under the new statutes, Hurst's conviction for assaulting a peace officer would be a Class IIIA felony, punishable by 0 to 5 years' imprisonment. See § 28-931; 1998 Neb. Laws, L.B. 1266. In *State v. Urbano, supra*, the Nebraska Supreme Court addressed the effect of legislative amendments to the sentence of a defendant, such as Hurst, whose crime was reclassified from a Class IV felony to a Class IIIA felony following sentencing but prior to final judgment. According to the *Urbano* court, the amendment's reclassification of certain crimes from Class IV felonies to Class IIIA felonies "classifies [such]

crime[s] as more severe and creates a potentially harsher minimum punishment than that which is permitted for Class IV felonies." 256 Neb. at 207, 589 N.W.2d at 154. Therefore, the *Urbano* court held that application of the amendatory terms and corresponding penalties found in the legislative amendments would convert a Class IV felony conviction to a Class IIIA conviction and would amount to an impermissible ex post facto application of the new law. The *Urbano* court concluded that the defendant's conviction remained that of a Class IV felony.

Based upon *State v. Urbano, supra,* Hurst's conviction for assaulting a peace officer remains a Class IV felony. Given the legislative amendments and the Supreme Court's decision in *Urbano,* Hurst's sentence for assaulting an officer, a Class IV felony, thus becomes an indeterminate sentence of 0 to 30 months' imprisonment; the sentence for resisting arrest, a Class I misdemeanor, becomes an indeterminate sentence of 0 to 6 months' imprisonment; and the sentence for criminal mischief, a Class III misdemeanor, becomes an indeterminate sentence of 0 to 3 months' imprisonment, all by operation of law. See, §§ 28-105, 28-106, and 29-2204; 1998 Neb. Laws, L.B. 1073 and L.B. 1266.

## CONCLUSION

There was sufficient evidence in the record for the jury to find that Hurst had the requisite intent necessary to convict him of the crimes charged. The district court's sentence of 6 months' imprisonment on count III, the criminal mischief conviction, a Class III misdemeanor, exceeds that authorized by statute and is accordingly modified.

AFFIRMED AS MODIFIED.