STATE of Wisconsin, Plaintiff-Respondent,

v.

Robert J. BETTERS, Defendant-Appellant.†

Court of Appeals

*No. 2012AP1339–CR. Submitted on briefs January 29, 2013.
—Decided June 18, 2013.*

2013 WI App 85

(Also reported in 835 N.W.2d 249.)

† Petition for Review filed.

On behalf of the defendant-appellant,the cause was submitted on the briefs of *Byron C. Lichstein,* Frank J. Remington Center, Madison.

On behalf of the plaintiff-respondent,the cause was submitted on the brief of *Maura FJ Whelan,* assistant attorney general, and *J.B. Van Hollen,* attorney general.

Before Hoover, P.J., Mangerson, J., and Thomas Cane, Reserve Judge.

¶ 1. MANGERSON, J. Robert Betters appeals a judgment of conviction and an order denying his post-conviction motion. He asserts the sentencing court erroneously relied on religious considerations. We conclude the court did not actually rely on irrelevant or improper factors when sentencing Betters, and affirm.

## BACKGROUND

¶ 2. Betters engaged in repeated sexual contact with his girlfriend's two teenage sons, N.H. and G.H. According to the complaint, N.H. told police that Betters recorded him dancing naked and posted the video on the Internet. Later, Betters told N.H. that "a company wanted more videos." On several occasions in 2009, Betters took N.H. to an area called the "tree farm," gave N.H. alcohol and marijuana, took nude photographs of N.H., and performed oral sex on him. G.H. told police that in 2009, Betters took him to the tree farm and performed oral sex on G.H. while G.H. recorded the act with Betters's cell phone. G.H. described several similar incidents, as well as an incident in G.H.'s bedroom in which an intoxicated G.H. performed anal intercourse on Betters and recorded it with Betters's cell phone.

¶ 3. Betters entered into a plea agreement with the State. Betters agreed to plead guilty to one count of repeated sexual assault of the same child (N.H.) and one

count of possession of child pornography. A third count, repeated sexual assault of the same child (G.H.) was dismissed and read in. As part of the plea colloquy, Betters admitted that the facts of the complaint were essentially true and accurate. The presentence investigation report recommended a sentence of twelve to thirteen years' initial confinement and seven to eight years' extended supervision. The State recommended eight years' initial confinement and ten years' extended supervision.

¶ 4. The court sentenced Betters on June 23, 2011. It first observed the three primary objectives of a sentence are protection of the public, punishment of the defendant, and rehabilitation. It then analyzed Betters's character and the gravity of the offenses. During sentencing, the court remarked that "every child is a gift from God," and indicated Betters's conduct toward the boys was "an abomination in the sight of God and in the sight of man, and . . . totally unacceptable." The court ultimately sentenced Betters to fifteen years' confinement and ten years' extended supervision on the first count, and ten years' initial confinement and five years' extended supervision on the second count, to run consecutively.

¶ 5. Betters filed a motion for postconviction relief, arguing that the court erroneously exercised its sentencing discretion by relying on religious considerations. At a hearing on the motion, the court observed that, following Betters's sentencing, it had been admonished by this court for using similar language in an unrelated case involving the sexual assault of a child. *See State v. Smith*, No. 2011AP1995–CR, unpublished slip op. (WI App March 13, 2012), *review denied*, 2012 WI 115, 344 Wis. 2d 305, 822 N.W.2d 882. At Betters's postconviction hearing, the court noted that we called

its *Smith* comments "ill-advised," but also observed that we nonetheless determined the court's religious beliefs were not the basis, or a primary basis, for the *Smith* defendant's sentence.[1] The court then reviewed Betters's sentencing transcript and concluded it had considered the proper factors and imposed an appropriate sentence.

## DISCUSSION

■■

¶ 6. Three primary factors must be considered by the circuit court when fashioning an appropriate sentence: the gravity of the offense, the defendant's character, and the need to protect the public. *State v. Harris*, 2010 WI 79, ¶ 28, 326 Wis. 2d 685, 786 N.W.2d 409. Within this framework, the court may consider a vast number of relevant factors, including the defendant's criminal record, past behavior, and culpability; the nature of the crime; and the rights of the public. *Id.* "Sentencing courts have considerable discretion as to the weight to be assigned to each factor." *Id.*

¶ 7. Our review of a sentencing decision is limited to determining whether the circuit court erroneously

---

[1] The parties engage in considerable discussion about whether it is proper to cite the unpublished per curiam opinion in *State v. Smith*, No. 2011AP1995–CR, unpublished slip op. (WI App March 13, 2012), *review denied*, 2012 WI 115, 344 Wis. 2d 305, 822 N.W.2d 882. This debate is largely academic. We are well aware that we have previously cautioned the circuit court that such religion-based comments are "ill-advised." Although Betters believes this admonition enhances his case, he is mistaken; each case must be evaluated on its facts. *See State v. Harris*, 2010 WI 79, ¶ 45, 326 Wis. 2d 685, 786 N.W.2d 409 ("Our obligation is to review the sentencing transcript as a whole, and to review potentially inappropriate comments in context.").

exercised its discretion. *Id.,* ¶ 30. "Discretion is errone-ously exercised when a sentencing court imposes its sentence *based on* or in *actual reliance upon* clearly irrelevant or improper factors." *Id.* Given our strong public policy against interference with the circuit court's discretion, we afford sentencing decisions a presumption of reasonableness. *Id.* "Accordingly, the defendant bears the heavy burden of showing that the circuit court erroneously exercised its discretion." *Id.* The defendant must establish, under the "clear and convincing" burden of proof, that it is "highly probable or reasonably certain" that the circuit court relied on an irrelevant or improper factor. *Id.,* ¶¶ 34–35.

¶ 8. In *State v. Ninham,* 2011 WI 33, ¶ 96, 333 Wis. 2d 335, 797 N.W.2d 451, *cert. denied,* 133 S. Ct. 59 (U.S. 2012), our supreme court concluded "a circuit court may not base its sentencing decision upon the defendant's or the victim's religion." A similar rule was recognized in *State v. Fuerst,* 181 Wis. 2d 903, 909, 512 N.W.2d 243 (Ct. App. 1994), in which the sentencing court observed that the defendant had "very little religious conviction," did not go to church, and did not believe in religion. We concluded that "the sentencing court's consideration of Fuerst's religious belief system and activities violated Fuerst's right to religious free-dom . . . ." *Id.* at 912. As *Harris* later clarified, *Fuerst* established that religious belief and church attendance are impermissible factors on which to base a sentence. *Harris,* 326 Wis. 2d 685, ¶¶ 38, 40.

¶ 9. *Ninham, Fuerst,* and *Harris* do not directly address Betters's key contention: that his sentence was based in part on the circuit court's notions of religious impropriety. It does not appear any published Wiscon-

sin case has yet addressed this issue. There have, however, been a number of federal cases on the topic.

■

¶ 10. Betters primarily relies on *United States v. Bakker*, 925 F.2d 728 (4th Cir. 1991). There, when sentencing a televangelist who had oversold partnerships and diverted partnership proceeds, the district court said, "He had no thought whatever about his victims and *those of us who do have a religion are ridiculed as being saps from money-grubbing preachers or priests.*" *Id.* at 731, 740. The court of appeals concluded this comment created the perception that the judge was announcing its "personal sense of religiosity" while punishing the defendant for offending it. *Id.* at 740. A court's religious beliefs are irrelevant for sentencing purposes, and therefore due process is violated when a judge "impermissibly takes his own religious characteristics into account in sentencing." *Id.* In *Bakker*, the court of appeals was "left with the apprehension that the imposition of a lengthy prison term here may have reflected the fact that the court's own sense of religious propriety had somehow been betrayed." *Id.* at 740–41.

¶ 11. Yet the *Bakker* court was cautious to note that not every "ill-advised word" will form the basis for reversible error. *Id.* at 741. Indeed, it was reluctant to grant relief even in the face of what it described as the "explicit intrusion of personal religious principles as the basis of a sentencing decision." *See id.* ("We remand this case with genuine reluctance . . . ."). Subsequent cases have demonstrated that the mere mention of a religious element during sentencing is generally insufficient to establish a due process violation.

¶ 12. In *Gordon v. Vose*, 879 F.Supp. 179, 184 (D. R.I. 1995), the state sentencing court, referring to the

Bible, stated, "no man should take more than he is willing to give." On federal habeas review, the district court concluded this statement conveyed a secular principle: "that if one commits a serious crime, he must expect to receive a severe punishment." *Id.* at 185. The defendant failed to show religious bias because the sentencing court did not express a personal religious preference and then sentence the defendant for violating it. *Id.*

¶ 13. The sentencing court in *United States v. Traxler*, 477 F.3d 1243, 1248 (10th Cir. 2007), similarly used religious language to express a secular concept. There, the court explicitly referred to the letters of the Apostle Paul, stating, "[G]ood things can come from jail. A guy named Paul was put in jail a couple thousand years ago and wrote a bunch of letters from jail . . . and people are still reading those letters and being encouraged by them and finding hope in them thousands of years later." *Id.* On appeal, the court rejected the defendant's due process challenge, concluding the judge's comments in no way suggested Traxler needed a longer sentence to "pay religious penance." *Id.* at 1249. Instead, the religious reference was meant to convey a secular message: "that something good can come from difficult circumstances, even jail." *Id.*

¶ 14. In *Arnett v. Jackson*, 393 F.3d 681, 682–83 (6th Cir. 2005), the court quoted two verses from the Book of Matthew when sentencing the defendant on numerous counts of rape of a minor. The court stated it had "turned to one additional source" to help it determine an appropriate sentence, and then quoted Matthew 18:5, 6.[2] *Id.* The court of appeals held that the

---

[2] The court quoted, "And whoso shall receive one such little child in my name, receiveth me. But, whoso shall offend one of

court's comments did not violate Arnett's due process rights. The sentencing judge made no reference to her own religious beliefs; instead, one plausible interpretation of the Biblical quotation was that it underscored "that our society has a long history of sternly punishing those people who hurt young children." *Id.* at 687–88. Although reasonable minds could question the sentencing court's mentioning the Bible, the sentencing court properly considered numerous aggravating and mitigating factors. *Id.* at 688.

¶ 15. With this background in mind, we turn to Betters's sentence. We must review the sentencing transcript as a whole, viewing potentially inappropriate comments in context. *Harris*, 326 Wis. 2d 685, ¶ 45. Accordingly, we reproduce the entire sentencing transcript below:

> Robert Betters, now I address you because this is the time that you and I have to spend together, and I believe that while I don't seek you to agree with the sentence I impose upon you, I think you're entitled to understand what my thinking is so that you at least realize what it is brings me to the ultimate decision I have to make.
>
> The law imposes upon me the duty to extend to you the following analysis: I must consider the protection of the public, punishment of the defendant, the defendant's rehabilitative needs. Within that I usually do an analysis in which I look at the character of the offender and the gravity of the offense.
>
> So . . . to begin with, you appear before me as a . . . 39–year-old adult male. So, first of all, you're no kid.

these little ones which believe in me, it were better for him that a millstone were hanged about his neck, and he were drowned in the depth of the sea." *Arnett v. Jackson*, 393 F.3d 681, 684 (6th Cir. 2005).

In addition, it is not at all helpful as you would well understand . . . that you've had prior sexual offenses for which . . . you have been convicted, and then in addition, you continue to be involved in the criminal justice system. So you have progressed through your time on this earth, but honestly between you and I, you have very little to show for it. That isn't negative, and, Mr. Betters, you're not an unintelligent person. I mean you've addressed me, and I honestly tell many defendants, . . . if the world had been different and you were sitting up here and I was sitting there, I don't think the two of us would necessarily be doing anything different. So I mean I genuinely feel that way, and that's why I'm talking to you the way I am because I don't think it's any big magic thing. It's just understanding what duty I have with regard to the criterion that I described to you.

In your favor you did come in here and you did accept responsibility, and so that—and you did plead guilty.

Now, what I need to share with you is that this first offense for which you have been convicted is a Class C felony. The law allows me to place you in prison for a period of 40 years, 25 years of initial confinement and 15 years of extended supervision.

What the legislature in this state has chosen to do is it has chosen to take felonies and then to use an alphabetical system to denominate them. So a Class A felony in the state of Wisconsin is first-degree intentional homicide. There is no other crime greater than that. It's life in prison, that the judge has the ability to create life without parole. That's an A. The B's are all the other major homicides, and those are 60 years. So—and the C's now, which is where you're at, are like 40 years, and they go all the way down to I.

So the first thing you need to understand is in the eyes of the people of this state, you have—you have offended at one of the highest levels possible.

437

Then with regard to the possession of child pornography, that's a Class D. So you can see that's just one level below that, but, nonetheless, these are very significant crimes.

Then I need to share with you, which I hope you agree with, every child is a gift from God. Your own life perhaps was set on a different course because of an event in your life, but the reality of it is as a society we have—we—in the court's view above the sanctity of life itself, I believe the greatest duty that we have as adults in a system is to protect the innocent, and so, you know, for you to have committed these acts, and I have often viewed this in your own life if you take a still pond and you heave a large rock into it, it creates a wave and a ripple. Where that wave goes and what it does no one knows, but . . . that's what [is] happening when we traumatize another human being. It happened to you, and now it's happened to two other young lives, and how those lives have been altered, how that pond has been altered only God himself knows, but you and I both know that they may have been altered in a dramatic and very destructive and negative way.[3]

Now, the other thing I have to share with you that is distressing and disturbing is you really took advantage of an extremely generous setting. So . . . you had somebody who took you in in a circumstance under which . . . you were not in a good place, and having had that trust, you violated that trust in the most monstrous way, and you and I both know that.

Now finally, Robert, I want to tell you this: My life's experiences tell me that adults, and I include you among them, they truly do understand that what alcohol and drugs do when we place them in our bodies is they reduce our ability to make good decisions, but at

---

[3] Betters does not argue this religious reference reflected consideration of an improper factor.

a point in time in life, and you're way beyond that, you consciously know that so that . . . when you abuse alcohol and drugs, you—you had to reasonably know that what that abuse would do would be to allow these desires, obsessions, compulsions, whatever you want to call it, to take control and drive you, and I believe you have to accept responsibility for that and understand that it is not a cause and effect relationship. You—you always had that there, but the reality of it was that you were able to discipline yourself in the world you were in, but you've—you've had to know in the court's view that if you became intoxicated or you became under the effect of a controlled substance that you had to know what that would do. That would release the beast, and in releasing the beast, you've conducted yourself in the way you did.

Behaviors against these boys are an abomination in the sight of God and in the sight of man, and you and I both also know that, that this—it is totally unacceptable.

So I've listened carefully to the arguments of the attorneys. I have considered the presentence investigation. I've listened to the statements of the victims. As counsel would reflect under *Gallion,* I would have to consider whether or not this would be a probation case. It clearly is not a probation case.

I am focusing primarily on the protection of the public, and by that I mean the children of our community who I believe would be at risk given Mr. Betters' present circumstances and behavior, and I'm also looking at punishment of the defendant.

Therefore, on Count 1, it is the sentence of the court and judgment of law that you be confined in the Wisconsin state prison system for a period of 25 years, 15 years of initial confinement and 10 years of extended supervision.

On Count 3, I'm sentencing him to a period of 15 years in the Wisconsin state prison system, ten years of initial

439

confinement and five years of extended supervision, and that sentence is consecutive.

. . . .

 I impose this sentence of this length of time because the literature to the best we understand it suggests that as one grows older, these propensities tend to go into remission or at least are much more controllable. I'm not persuaded that given the behaviors that are represented to me here that there are many treatment modalities that—that have the kind of clarity and certainty that would persuade me to allow you to be back into the community, and I think the record does reflect . . . that when you were in the community and you committed this offense, you certainly manipulated the system in such a way as to be . . . basically . . . underground and not really able to be fully observed and controlled. So for all those reasons that's the sentence I have imposed.

¶ 16. Taking the sentencing comments as a whole, it is not "highly probable or reasonably certain" that the circuit court sentenced Betters on impermissible religious grounds. The court properly identified the tripartite purpose of sentencing. *See State v. Gallion*, 2004 WI 42, ¶¶ 23, 40, 270 Wis. 2d 535, 678 N.W.2d 197. Within this framework, it properly emphasized Betters's character, personality, and criminal history, as well as the nature of the offenses. *See Harris*, 326 Wis. 2d 685, ¶ 28. The court determined that a lengthy prison sentence was warranted based on the seriousness of the offenses, the manner of their commission, the age of the victims, and Betters's past criminal violations and abuse of trust. The court then explained how these factors promoted the two sentencing objectives the court viewed as most important, punishment and protection of the community. *Gallion*, 270 Wis. 2d 535, ¶ 46.

¶ 17. The sentencing court's belief that "every child is a gift from God" does not constitute an impermissible religious factor. Placing this comment in context, it is clear the court was referring to the secular notion that an individual's "greatest duty" is to "protect the innocent." As the court explicitly recognized by referring to this mandate as a societal obligation, this duty is plainly expressed in statutes criminalizing sexual conduct between adults and minors. *See Arnett*, 393 F.3d at 687–88 ("[O]ur society has a long history of sternly punishing those people who hurt young children."). The court properly observed that Betters's violation of this societal duty would likely impact the victims for the rest of their lives. Thus, although the court's religious comment was ill-advised, the court's actual sentence was informed by proper secular factors regarding the seriousness of the offense, and the nature and extent of injury to the victim.

¶ 18. Similarly, the court's statement that Betters's conduct was "an abomination in the sight of God and in the sight of man" does not represent reliance on an impermissible religious factor. To the extent the court's statement suggested its "personal sense of religiosity" was offended by Betters's conduct, its immediate reference to "the sight of man" suggested that Betters's sexual abuse was no more offensive to the court's religious sensibilities than it was to well-established social norms. By immediately placing Betters's conduct in a secular context, the court mitigated any perception that its comments were intended to establish that the "court's own sense of religious propriety had somehow been betrayed." *See Bakker*, 925 F.2d at 740–41.

¶ 19. As the State observes, religious and social condemnation often, but not always, overlap. In *State v.*

441

*Pattno*, 579 N.W.2d 503 (Neb. 1998), the twenty-five-year-old male defendant pled guilty to sexual assault of a thirteen-year-old boy. At sentencing, the court read a lengthy Biblical excerpt strongly condemning homosexuality, stating, in part, "the men likewise gave up natural relations with women and were consumed with passion for one another, men committing shameless acts with men and receiving in their own persons the due penalty for their error." *Id.* at 506. On appeal, the court observed that "[s]tatements of religious expression by a judge or remarks which suggest that the judge dislikes the crimes committed by a defendant do not necessarily evidence improper bias or prejudice." *Id.* at 509. However, Pattno's crime was that he had sexual contact with a minor; not sexual contact with another male. *Id.* at 508. "Therefore, the [B]iblical scripture which the judge read was not relevant to the crime to which Pattno pled guilty, and it should not have been considered by the judge in determining an appropriate sentence." *Id.* While the court's religious condemnation in *Pattno* was directed at conduct irrelevant to the criminal offense, here, the court simultaneously expressed religious and societal outrage at clearly proscribed conduct.

¶ 20. Taken as a whole, the sentencing transcript in this case demonstrates that the court considered proper factors and linked them to appropriate sentencing objectives. Although the court used religious language, sparingly, during its analysis, Betters has failed to show that it is highly probable or reasonably certain his sentence was based on the court's religious convictions. We stress again that the court's invocations of a religious deity were ill-advised. However, not every "ill-advised word" will create reversible error. *See Bakker*, 925 F.2d at 741. The transcript reflects that the court's offhand

442

religious references addressed proper secular sentencing factors. Thus, we conclude the court properly exercised its discretion. The judge's comments do not suggest Betters required a longer sentence to "pay religious penance." *See Traxler*, 477 F.3d at 1249.

*By the Court.*—Judgment and order affirmed.